UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Adv. Case No.: 26-04027 |
| Jenna Ione Kaltved | Bky. Case No. 26-40537 |

Debtor,

Jenna Ione Kaltved,

Plaintiff,

v.

Service Mac LLC, AmeriHome Mortgage
Co., LLC, Onward Financing LLC, Federal
National Mortgage Association, and Mortgage
Electronic Registration Systems, Inc.

Defendants.

**DEFENDANT ONWARD FINANCING LLC'S
AMENDED NOTICE OF HEARING AND MOTION**

TO: Jenna Ione Kaltved, and other entities specified in the applicable Federal Rules of

Bankruptcy Procedure and Local Rule 9013-2.

1.      Onward Financing LLC ("Movant") moves the Court for the relief requested

below and gives notice of hearing.

2.      The court will hold a hearing on this motion at 10:30 am on Thursday, June

11, 2026, in Courtroom 8 West, at the United States Courthouse, at 300 South Fourth

Street, in Minneapolis, Minnesota.

3.      Any response to this motion must be filed and served not later than Thursday,

June 4, 2026, which is seven days before the time set for the hearing (including Saturdays,

Sundays, and holidays).  **Unless a response opposing the motion is timely filed, the court may grant the motion without a hearing.**

4.     This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1.  The Complaint commencing this adversary proceeding was filed on March 10, 2026.  The case is now pending in this Court.

5.     This Motion arises under Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b)(6).  This motion is filed under Fed. R. Bankr. P. 9013 and Local Rule 9013-1. Movant requests relief with respect to dismissal of Plaintiffs' Complaint.  This Motion is based on the accompanying memorandum of law, all of the files, records, and proceedings herein, such argument as may be presented to the Court, and all matters of which the Court may take judicial notice.

WHEREFORE, Onward Financing LLC moves the court for an order for an Order dismissing Plaintiff Jenna Kaltved's Complaint with prejudice and such other relief as may be just and equitable.

**REDFORD LAW PA**

Dated: May 19, 2026

    /s/ Shaun Redford
Shaun Redford, #390127
Redford Law PA
7201 Ohms Lane, Suite 210
Edina, MN 55439
shaun@redfordlaw.com
(952) 224-3644
*Attorney for Defendant Onward Financing LLC*

2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Adv. Case No.: 26-04027 |
| Jenna Ione Kaltved | Bky. Case No. 26-40537 |
| Debtor, | |
| | |
| Jenna Ione Kaltved, | |
| Plaintiff, | |
| | |
| v. | |
| | |
| Service Mac LLC, AmeriHome Mortgage Co., LLC, Onward Financing LLC, Federal National Mortgage Association, and Mortgage Electronic Registration Systems, Inc. | |
| | |
| Defendants. | |

**DEFENDANT ONWARD FINANCING LLC'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant Onward Financing LLC ("Onward") submits this Memorandum of Law

in support of its Motion to Dismiss Plaintiff Jenna Ione Kaltved's ("Plaintiff") Adversary

Complaint pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6).

**<u>INTRODUCTION</u>**

This adversary proceeding is Plaintiff's third attempt at challenging the validity of

her mortgage loan and the now-completed foreclosure of the mortgage based on legal

theories that Minnesota courts have rejected.  Following the dismissal (with prejudice) of

an Anoka County District Court lawsuit in 2024, Plaintiff and her spouse filed a second

lawsuit in the United States District Court for the District of Minnesota that was similarly

dismissed (with prejudice) on May 18, 2026.  Plaintiff's Adversary Complaint is based on

1

the same issues previously dismissed in by both the state and federal courts: "show me the note" and debt validation claims that are not recognized causes of action in Minnesota. Accordingly, Plaintiff's claims are barred by res judicata, also referred to as claim preclusion, and the Adversary Complaint against Onward should be dismissed with prejudice.

## BACKGROUND

On December 28, 2021, Plaintiff executed a note and mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Onward to secure repayment of a $403,750 loan they obtained to purchase the property located at 15581 Iodine Street NW, Ramsey, Minnesota. (Doc. 1 at ¶ 9; Ex. F.) On October 11, 2023, MERS assigned the mortgage to Defendant AmeriHome Mortgage Company, LLC. (Doc. 1 at ¶ 11; Ex. F.)

### The First Lawsuit.

On March 13, 2024, Plaintiff filed a lawsuit in Anoka County District Court, *Kaltved v. AmeriHome Mortgage Company, LLC*, Case Number 02-CV-24-1270 (the "First Lawsuit")[1]. In the First Lawsuit, Plaintiff brought various claims against AmeriHome challenging the validity of the loan primarily due to an alleged ineffective assignment of the note and mortgage. (Ex. 1.) In response to AmeriHome's Motion to Dismiss, the state court issued an Order for Dismissal of Plaintiff's Complaint dated

---

[1] Onward requests that the Court take judicial notice of the pleadings, orders, and other documents filed in the First Lawsuit because they are matters of public record. *See Crisman v. Chicago Title Insurance Company*, No. 24-CV-3188 (JRT/LIB), 2026 WL 752194, at *2, n. 2 (D. Minn. March 17, 2026).

September 4, 2024. (Ex. 2.) In the Order, the state court specifically references Onward and notes that Plaintiff's allegations were "based upon her questioning the validation of the nature of the assignment of the debt between Onward Financing and AmeriHome Mortgage." (Ex. 2 at 4.) The state court's Order cited the precedential holding of *Jackson v. Mortgage Electronic Registration Systems*, Inc., 770 N.W.2d 487 (Minn. 2009) and held that Plaintiff's claims fell "under the exact 'show-me-the-note' reasoning that has been resoundingly rejected by the courts." (Ex. 2 at 5.) The court dismissed the Complaint for failure to state a claim upon which relief may be granted, and with prejudice. (Ex. 2 at 1.)

Foreclosure Sale.

The sheriff's sale occurred on July 1, 2025 and the property was sold to AmeriHome for $342,100.00 subject to a six-month redemption period. (Doc. 1 at ¶ 11, Ex. I.). Plaintiff does not allege any action by Onward regarding the sheriff's sale. (Doc. 1.)

Plaintiff's Second Lawsuit Seeks to Relitigate the Same Claims from the First Lawsuit.

On December 23, 2025, Plaintiff and her spouse filed a Complaint against Onward, among others, in the United States District Court for the District of Minnesota, *Douglas Kaltved and Jenna Kaltved v. Brad Wise, et al.,* case number 0:25-cv-04755-NEB-JFD (the "Second Lawsuit"). (Ex. 3.) The claims in the Second Lawsuit were based on the same allegations as the First Lawsuit, namely, challenging the validity of the debt including the assignment by Onward and MERS to AmeriHome. (*Compare* Ex. 1, 3.)

On May 18, 2026, the U.S. District Court issued an order granting Onward's Motion for Judgment on the Pleadings in the Second Lawsuit based on claim preclusion. (*See*

3

Second Lawsuit Doc. 161.)  The Court ruled that Onward was in privity with AmeriHome and therefore claim preclusion applied to Plaintiff's claims against Onward in the Second Lawsuit even though Onward was not a party to the First Lawsuit.  (*Id.*)

Plaintiff Files this Third Lawsuit Seeking to Relitigate the Same Claims from the First and Second Lawsuits.

Plaintiff filed this Adversary Proceeding on March 10, 2026.  (Doc. 1.)  Plaintiff's Adversary Complaint asserts claims for quiet title and declaratory relief and alleges that the debt is invalid and that the sheriff's sale is voidable and unenforceable.  (Doc. 1 at ¶ 16.)  All of Plaintiff's claims are the same or are derived from claims that were rejected in the First Lawsuit and again in the Second Lawsuit.  (*Compare* Doc. 1 with Ex. 1 and 3.)

## **STANDARD OF REVIEW**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court construes the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  At the motion to dismiss stage, the Court may

4

consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). The Court may also consider matters of public record and exhibits attached to the pleadings, as long as those documents do not conflict with the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

"*Pro se* complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced."  *Knapp v. Wings Credit Union*, No. CV-24-434 (DWF/ECW), 2024 WL 4774537, at *2 (D. Minn. Nov. 8, 2024) *aff'd*, No. 24-3359, 2025 WL 837911 (8th Cir. Mar. 18, 2025) (*citing Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).  This Court "is under no obligation to repeatedly accept baseless filings."  *Id.*

The affirmative defense of res judicata may be raised on a motion to dismiss.  *Magee v. Hamline Univ.*, 1 F.Supp.3d 967-972 (D. Minn. 2014).

## ARGUMENT

**I.  PLAINTIFF'S CLAIMS AGAINST ONWARD ARE BARRED BY RES JUDICATA.**

The doctrine of res judicata precludes parties from raising subsequent claims in a second action when: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter."  *Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 220 (Minn. 2007).  Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action.  *State v. Joseph*, 636 N.W.2d 322, 327 (Minn.

5

2001); *see also Paulos v. Johnson*, 597 N.W.2d 316, 319 (Minn. Ct. App. 1999) ("res judicata bars the litigation of two successive suits involving claims that, regardless of their labels, arise from the same operative nucleus of facts."). The "[a]pplication of res judicata to preclude a claim is a question of law" and therefore appropriate for a motion to dismiss. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).

Here, each of the four prongs support the application of res judicata to bar Plaintiff's claims against Onward.

### A. The First Lawsuit and the Second Lawsuit Involved the Same Set of Factual Circumstances as this Action.

The first prong of res judicata looks at whether "the earlier claim involved the same set of factual circumstances." *Brown-Wilbert, Inc.*, 732 N.W.2d at 220. Here, the First Lawsuit and the Second Lawsuit both involve the exact same "operative nucleus of facts" as this action: the same property, note, mortgage, assignment, and resulting foreclosure. This prong is met.

### B. The First Lawsuit and the Second Lawsuit Involved the Same Parties or their Privities.

The second prong of res judicata looks at whether "the earlier claim involved the same parties *or their privities*." *Id*. Privity "'expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties.'" *Id*. (quoting Restatement (First) of Judgments § 83 cmt. a (1942)). In general, privity "involves a person so identified in interest with another

6

that he represents the same legal right." *McMenomy v. Ryden*, 148 N.W.2d 804, 807 (Minn. 1967) (citing 30A Am.Jur. *Judgments* § 399 (1958)).

AmeriHome was the sole named defendant in the First Lawsuit. (Ex. 1.)  But res judicata still applies as to Onward because Onward was in direct contractual privity with AmeriHome by virtue of the assignment of the debt to AmeriHome.  Onward's interest was so connected with AmeriHome that they represented the same legal right.  In its May 18, 2026 granting of Onward's Motion for Judgment on the Pleadings, the U.S. District Court agreed, and confirmed that Onward was in privity with AmeriHome and that dismissal of Plaintiff's claims against Onward based on res judicata/claim preclusion was warranted. (*See* Second Lawsuit Doc. 161.)  This prong is met.

### C. The Judgment in the First Lawsuit was a Final Judgment on the Merits.

The third prong of the res judicata analysis requires "a final judgment on the merits." *Brown-Wilbert, Inc.*, 732 N.W.2d at 220.  In the First Lawsuit, the state court dismissed all claims with prejudice for failure to state a claim on which relief can be granted.  A dismissal for failure to state a claim constitutes a final judgment on the merits for purposes of res judicata.  *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 509 (8th Cir. 2012).  The U.S. District Court's dismissal of claims against Onward in the Second Lawsuit for failure to state a claim similarly constitutes a final judgment on the merits.  This prong is met.

### D. The Undisputed Facts Show that Appellants had a Full and Fair Opportunity to Litigate this Matter in the First Lawsuit.

The fourth prong of res judicata requires that "the estopped party had a full and fair opportunity to litigate the matter." *Brown-Wilbert, Inc.*, 732 N.W.2d at 220.  "The question

of whether a party had a full and fair opportunity to litigate a matter generally focuses on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *Anderson v. City of St. Paul*, 849 F.3d 773, 779 (8th Cir. 2017). Here, there was no obstacle preventing Plaintiff from including Onward as a defendant in the First Lawsuit. Onward's involvement in the loan was fully known to Plaintiff. (Doc. 1 at ¶ 8, 9; Ex. S.) Plaintiff made direct reference to Onward in her communication to AmeriHome seeking documents related to the mortgage loan (Doc. 1, Ex. G), and the state court even referenced Onward in its Order dismissing the First Lawsuit, noting that Plaintiff's claims were "based upon her questioning the validation of the nature of the assignment of the debt between Onward Financing and AmeriHome Mortgage." (Ex. 2 at 4.)

Moreover, On May 18, 2026 the U.S. District Court dismissed with prejudice the functionally identical claims made by Plaintiff directly against Onward in the Second Lawsuit. (*See* Second Lawsuit Doc. 161.) This prong is met.

Ultimately, as a matter of fundamental fairness and equity, and to avoid wasting judicial resources, Plaintiff should be estopped from relitigating this matter against Onward. All four prongs of res judicata are met, and this Court should grant Onward's Motion to Dismiss.

**II.    PLAINTIFF'S CLAIMS AGAINST ONWARD SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK STANDING TO CHALLENGE THE ASSIGNMENT OF THE NOTE AND MORTGAGE.**

It is settled law that borrower plaintiffs do not have standing to challenge the assignment of notes and mortgages because such plaintiffs are not parties to the assignments. *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 547 (8th Cir. 2013) (citing approvingly to various district court cases in Minnesota).  Here, the assignments at issue were between Onward and AmeriHome, and Plaintiff was not a party to those assignments.  Plaintiff's claims should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Defendant Onward Financing LLC requests that the Court dismiss Plaintiff's Adversary Complaint with prejudice for failure to state a claim under which relief can be granted under Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure Rule 12(b)(6) and grant any further relief to which Defendant is entitled.

**REDFORD LAW PA**

Dated: May 19, 2026

 /s/ Shaun Redford
Shaun Redford, #390127
Redford Law PA
7201 Ohms Lane, Suite 210
Edina, MN 55439
shaun@redfordlaw.com
(952) 224-3644
*Attorney for Defendant Onward Financing LLC*

9

# Exhibit 1

Filed in District Court
State of Minnesota

MAR THE CIRCUIT COURT OF ANOKA COUNTY

| | |
|---|---|
| Jenna Kaltved,<br><br>    Plaintiff,<br><br>vs.<br><br>AMERIHOME MORTGAGE COMPANY, LLC,<br><br>    Defendant. | Case No.: _02-CV-24-1270_<br><br>**PLAINTIFF'S VERIFIED COMPLAINT AND<br>REQUEST FOR RELIEF** |

### VERIFIED COMPLAINT AND REQUEST FOR RELIEF

COMES NOW, Plaintiff, Jenna Kaltved ("Plaintiff"), by her own authority, to respectfully request that this Court take notice of the fact Plaintiff is without counsel, is not schooled in law and legal procedures, and is not licensed to practice law. Therefore, Plaintiff's pleadings must be read and construed liberally.

Plaintiff brings this complaint against Defendant AMERIHOME MORTGAGE COMPANY, LLC and alleges as follows:

### PARTIES

1. Plaintiff is a woman who has a principal place of dwelling in Anoka County and is the holder of the account with Defendant.

2. Defendant is a business that regularly engages in commerce in Anoka County.

### JURISDICTION AND VENUE

3. This court has jurisdiction over this matter as courts rely on established legal principles and precedents to determine breach of contract, acquiescence and estoppel claims.

4. Venue is proper because the harm to be enjoined is threatened in Anoka County.

5. This Honorable Court has jurisdiction.

### FACTUAL ALLEGATIONS

6. On December 28, 2021, Plaintiff and Defendant entered into a written contract.

7. The Plaintiff, relying on Generally Accepted Accounting Principles and Financial Accounting Standards Board principles, conducted due diligence to ensure fairness, equal consideration and transparency in the alleged loan transaction.

8. On September 25, 2023, the Plaintiff sent a **Notice of Conditional Acceptance and Offer to Perform**, along with an **Affidavit of Facts: Verification & Validation of Debt** to the Defendant. Attached hereto as Exhibit 1.

9. The **Notice of Conditional Acceptance and Offer to Perform** was issued by the Plaintiff, exercising their rights as an interested party, seeking transparency and legitimacy regarding the alleged loan transaction. Attached hereto as Exhibit 1.

10. The Plaintiff, in their notice, specifically requested comprehensive loan and account information, focusing on the origin, ownership, authenticity, and accuracy of the alleged debt, based on Generally Accepted Accounting Principles (GAAP) and Financial Accounting Standards Board (FASB) principles.

11. Said correspondence gave Defendant a reasonable amount of time to provide the requested documents and information to avoid acquiescence to the terms stipulated in Plaintiff's requests.

12. On November 7, 2023, the Plaintiff received documents from Defendant in response to the first Notice, indicating the Defendant's initial acknowledgment and engagement in the matter.

13. Despite the Plaintiff's good-faith disclosure requests and numerous opportunities provided for the Defendant to respond, Defendant failed to provide full disclosure and verification of the alleged loan.

14. On December 1, 2023, the Plaintiff, not satisfied with the Defendant's response, sent a **MORTGAGE FOLLOW UP LETTER** to Defendant, seeking further clarification and information. Attached hereto as Exhibit 2.

15. On December 18, 2023, the Plaintiff received a Mortgage Statement from Defendant, raising additional questions regarding the consideration given in relation to the alleged debt and mortgage loan.

16. Subsequently, on January 5, 2024, the Plaintiff received an Acknowledgment Letter from Defendant, indicating continued communication between the parties.

17. The Defendant's failure to provide full disclosure and verification of the alleged loan, coupled with the Plaintiff's due diligence, has created uncertainty about the true nature of the transaction, including its authenticity, ownership, and the consideration provided by Defendant.

18. The Plaintiff reasonably believed that the Defendant's failure to respond also indicated an inability to establish the loan/debt's validity, rightful ownership, and holder-in-due-course status.

19. The Defendant's actions, including the failure to respond adequately to the Plaintiff's requests, the supposed lack of good faith, adequate consideration, acquiescence and estoppel have caused the Plaintiff damages, including ongoing alleged obligations and potential negative credit consequences.

## ARGUMENT

### Plaintiff's Request for Disclosure of Material Information

20. Plaintiff initiated this action after conducting extensive research on banking and accounting principles, discovering that the Defendant possibly failed to disclose crucial information regarding the alleged loan transaction.

21. Plaintiff acknowledges their non-expertise in banking and asserts that it is reasonable for someone without expertise in law, banking, or accounting to raise questions about the transaction.

22. Plaintiff formally requested the Defendant to verify the validity, origin and ownership of the alleged debt and provide evidence of equal and adequate consideration in the transaction. This request was made in accordance with established legal principles, emphasizing the Plaintiff's commitment to good faith and clean dealings in resolving the commercial matter.

23. In the alternative, Plaintiff requested Defendant respond to Plaintiff's request by written affirmation telling Plaintiff that their contentions are either correct or incorrect.

24. Defendant responded with a photocopy of the alleged financial agreement in question, along with a copy of the transaction history of Plaintiff's account.

25. Plaintiff is of the understanding this is not verified evidence and full disclosure of origin, ownership, authenticity, and accuracy of the alleged loan and transaction.

26. Plaintiff emphasizes the Black's Law 6th edition definitions below:
    a. "**Verify**. To confirm or substantiate by oath or affidavit. Particularly used for making formal oaths to accounts, petitions, pleadings, and other papers."
    b. "**Verification**. Confirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition. Affidavit of truth of matter stated and object of verification is to assure good faith in averments or statements of party. Sheeley v. City of Santa Clara, 215 Cal.App.2d 83, 30 Cal.Rptr. 121, 123. "Sworn or equivalent confirmation of truth."

27. Plaintiff further requested Defendant to "please send a statement that reflects that the consumer was given full disclosure of all material facts of the loan transaction, or send a particular statement that reflects that your company is not required to do so."

28. Plaintiff emphasized, "it is now, and always has been, my intention to operate with good faith and with clean hands, I am working diligently to satisfy this commercial matter" and is not looking to avoid performing any obligation Plaintiff may lawfully owe.

## COUNTS

### Count I: Breach of the Implied Covenant of Good Faith and Fair Dealing

29. Plaintiff incorporates paragraphs 1-28 by reference as if fully stated herein.

30. Existence of a Contract: There must be a valid contractual relationship between the Plaintiff and Defendant.

31. Implied Covenant: Every contract carries an implied covenant of good faith and fair dealing.

32. Failure to Act in Good Faith: Defendant breached the implied covenant by not providing full disclosure, verification, and adequate responses regarding the alleged loan transaction.

33. Causation: The breach of the implied covenant directly resulted in damages to the Plaintiff, including financial repercussions and potential credit consequences.

### Count II: Breach of Implied Contract from Acquiescence

34. Plaintiff incorporates paragraphs 1-33 by reference as if fully stated herein.

35. Engagement in Private Correspondence: There has been a history of private correspondence between the Plaintiff and Defendant regarding the alleged debt and mortgage loan.

36. Mutual Understanding: Through the course of communication, a mutual understanding was established through the exchange of letters, creating an implied contract.

37. Implicit Agreement: Defendant, by engaging in private correspondence, implicitly agreed to cooperate and provide relevant information.

38. Breach of Implied Contract: Defendant breached the implied contract by failing to provide the necessary information and verification requested by the Plaintiff within the time frame stated in said correspondence.

39. Causation: The breach of the implied contract resulted in damages to the Plaintiff, including ongoing alleged obligations and potential negative credit consequences.

### Count III: Lack of Consideration

40. Plaintiff incorporates paragraphs 1-39 by reference as if fully stated herein.

41. Existence of a Contract: A valid contractual relationship existed between the Plaintiff and Defendant.

42. Fundamental Element of Consideration: Consideration is a fundamental element of a valid contract, requiring both parties to provide something of equal or adequate value.

43. Questionable Provision of Credits: Defendant allegedly provided credits on a transaction account through bookkeeping, lacking intrinsic value and not representing a tangible exchange of value.

44. Breach of Consideration: Defendant's provision of credits, devoid of intrinsic value, constitutes a breach of the contractual relationship.

45. Causation: The lack of equal or adequate consideration resulted in damages to the Plaintiff, including ongoing alleged obligations and potential negative credit consequences.

### Verified Complaint and Request for Relief

### Count IV: Failure to Prove Bona Fide Loss

46. Plaintiff incorporates paragraphs 1-45 by reference as if fully stated herein.

47. Transparency Request: The Plaintiff exercised the right to seek transparency regarding the alleged loan transaction.

48. Inadequate Proof of Loss: Defendant failed to adequately prove a bona fide loss resulting from the alleged debt and mortgage loan.

49. Doubts About Debt Validity: Lack of evidence demonstrating a legitimate financial loss raises doubts about the validity of the claimed debt.

50. Plaintiff's Due Diligence: The Plaintiff's reliance on recognized accounting principles and Defendant's inability to substantiate a bona fide loss contribute to the uncertainty surrounding the transaction.

51. Causation: Defendant's failure to prove a bona fide loss resulted in damages to the Plaintiff, including ongoing alleged obligations and potential negative credit consequences.

### Count V: Lack of Bona Fide Holder Status

52. Plaintiff incorporates paragraphs 1-51 by reference as if fully stated herein.

53. Claimed Holder in Due Course Status: Defendant claims holder in due course status regarding the alleged debt and mortgage loan.

54. Scrutiny of Status: The Plaintiff, acting in good faith, raises legitimate questions about Defendant's assertion of holder in due course status.

55. Breach of Status Impacts Validity: Lack of proper bona fide holder status may impact the validity and enforceability of the alleged debt.

56. Plaintiff's Right to Clarification: The Plaintiff has the right to seek clarification regarding Defendant's status to ensure transparency and understanding of the transaction.

57. Causation: Lack of proper bona fide holder status by Defendant raises questions about the legitimacy and transferability of the alleged debt, causing damages to the Plaintiff.

### Count VI: Unfair Business Practice

58. Plaintiff incorporates paragraphs 1-57 by reference as if fully stated herein.

59. Failure to Provide Information: Defendant engaged in unfair business practices by failing to provide comprehensive disclosure of loan and account information as requested in good faith by the Plaintiff.

60. Intent to Mislead: The failure to respond adequately to inquiries and provide transparent details about the alleged debt and mortgage loan constitutes an unfair and deceptive business practice.

61. Impact on Plaintiff: Defendant's actions have caused uncertainty about the true nature of the transaction, negatively impacting the Plaintiff.

### Verified Complaint and Request for Relief

62. Ongoing Damages: The Plaintiff suffered ongoing damages and potential negative credit consequences due to Defendant's unfair business practices.

63. Causation: The Plaintiff seeks relief for the harm suffered due to Defendant's unfair business practices, emphasizing the need for transparency, legitimacy, and compliance with legal and ethical standards in financial transactions.

### Count VII: Estoppel

64. Plaintiff incorporates paragraphs 1-63 by reference as if fully stated herein.

65. Engagement in Communication: The Plaintiff and Defendant engaged in ongoing communication regarding the alleged debt and mortgage loan.

66. Implied Consent: Through continued correspondence and acknowledgment of communication, an implied consent or acquiescence is established.

67. Reliance on Implied Consent: The Plaintiff reasonably relied on Defendant's implied consent or acquiescence, expecting cooperation, transparency, and adequate responses.

68. Defendant's Breach: Defendant breached the implied consent or acquiescence by failing to provide the necessary information and verification requested by the Plaintiff.

69. Causation: The breach of the implied consent or acquiescence resulted in damages to the Plaintiff, including ongoing alleged obligations and potential negative credit consequences.

70. Estoppel Application: Defendant is estopped from denying the existence of the implied consent or acquiescence, given the Plaintiff's reliance and the ongoing communication between the parties.

71. Causation: The Plaintiff suffered damages directly resulting from Defendant's breach of the implied consent or acquiescence, justifying the application of estoppel as a remedy.

### Count VIII: Removal, Release, and Revocation of Lender's Rights, Titles, and Interest

72. Plaintiff incorporates paragraphs 1-71 by reference as if fully stated herein.

73. Claimed Rights, Titles, and Interest: Defendant claims rights, titles, and interest in the alleged mortgage loan.

74. Clouded Claim: Lack of adequate consideration, good faith, and fair dealing questions the legitimacy of Defendant's asserted rights.

75. Plaintiff's Commitment to Good Faith Dealings: The Plaintiff's commitment to good faith dealings contrasts with Defendant's actions, justifying the removal, release, or revocation of claimed rights, titles, and interest.

76. Uncertainties Surrounding Transaction: The uncertainties surrounding the transaction, exacerbated by Defendant's intentional non-disclosure, strengthen the Plaintiff's request for a just and equitable resolution.

**Verified Complaint and Request for Relief**

77. Causation: The Plaintiff emphasizes the need for a just and equitable resolution that aligns with the principles of good faith and fair dealing in contractual relationships.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against Defendant and award Plaintiff the following relief:

a. Grant restitution for the Counts listed herein;

b. Declaration that the alleged debt is not owed and is unenforceable;

c. Order the Defendant to transfer the certificate of title to the property, namely Plaintiff's principal dwelling located at 15581 Iodine Street Northwest, Ramsey, MN 55303.

d. Order the Defendant to relinquish any other rights, liens, or claims over the property and to execute any necessary documents or instruments required for the transfer of title to the Plaintiff;

e. Actual damages in an amount to be determined, but not less than $43,164.07;

f. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted ___13___ day of ___March_____, 2024,

UNDER PENALTIES OF PERJURY, I affirm that the facts alleged in the foregoing are true and correct according to my own personal knowledge.

Signed reserving all my rights.

_____

By: Jenna Kaltved, a woman

Kaltved: Jenna

*Exhibit 1*

*page 1 of 7*

Mail responses to:
Jenna Kaltved
38868 12th Ave
North Brand, MN 55056

**To** , Jim Furash, CEO of AMERIHOME MORTGAGE
 1 Baxter Way Ste 300,
Thousand Oaks, CA 91362

09/25/2023

Certified Mail Number No. 7022 2410 0002 5637 0085 RRR

**RE: AMERIHOME MORTGAGE Account No. 0173355454**

**NOTICE OF CONDITIONAL ACCEPTANCE**
**AND OFFER TO PERFORM**

Peaceful greetings to you Mr. Jim Furash, CEO, and agents of AMERIHOME
MORTGAGE, I hope the NOTICE OF CONDITIONAL ACCEPTANCE AND OFFER TO
PERFORM (hereinafter Notice) reaches to in good health and stead.

I am writing you and giving you this Notice because I received a bill which appears to
reflect that you and your company are expecting payment for an alleged debt. After
doing my due diligence to ensure that there is a debt owed, it appears to me that this
alleged debt is not valid. Therefore, I am exercising my right to request and require
you and your company to verify that this alleged debt is valid. As it is now, and always
has been, my intention to operate with good faith and with clean hands, I am working
diligently to satisfy this commercial matter. As it appears to me that you and your
agency are of some belief that the debt is valid, I would like for you and your institution
to cease any collection of the alleged debt until it can be verified that there is a valid
debt that I, as a consumer, owe.

This Notice, once more, is to inform you that it is not now and never will be my
intention to avoid paying anything I lawfully owe. It is now and always has been my
intention to conduct myself and my commercial affairs in good faith and with clean
hands. It is my intent to settle this matter promptly and remain in honor. This Notice

Page **1** of **5**

Exhibit 1 page 2 of 7

will serve as an offer to perform on your claim and a conditional acceptance of your offer under these certain conditions. Please verify under oath that this claim is valid, free from any claims and defenses including but not limited to: any failure of your company to give full disclosure of the agreement, failure of consideration or material alterations, and that the original lender provided value.

**As I understand it, ONWARD FINANCING nor AMERIPRISE FINANCIAL INC did not give full disclosure in this agreement and as a result I was not made aware of the following facts that would reveal that this debt is not valid. The following facts support my position in this matter:**

1.   ONWARD FINANCING failed to disclose to the consumer JENNA KALTVED (hereinafter "consumer") that ONWARD FINANCING used consumer's note, capital, funds, money or money equivalent to fund a note, check or similar instrument that was used to fund the charges on the alleged account, whereby ONWARD FINANCING risked nothing of value.

2.   ONWARD FINANCING has not used any of their own capital, funds, money or money equivalents to pay for any charges on the alleged account.

3.   ONWARD FINANCING received "something-for-nothing" by using the consumer's note(s) to fund charges to the loan account while retaining payments from consumer.

4.   So, due to the fact that ONWARD FINANCING failed to disclose the above information in their loan agreement prior to soliciting applicant to become bound by it, I as a consumer did not knowingly, intentionally, voluntarily and intelligently get into any agreement to pay any monthly charges

5.   Due to the lack of disclosure, AMERIHOME MORTGAGE has, directly or indirectly, used false, deceptive, or misleading representations or means, in the same way that a debt collector would be in violation of Section 807 of the FDCPA, 15 U.S.C. §1692e

6.   If there was any securitization of the "initial outstanding balances" of the alleged account, ONWARD FINANCING nor AMERIHOME MORTGAGE would not be a

Page 2 of 5

Exhibit 1  page 3 of 7

holder in due course, and therefore cannot have incurred a loss or make a valid claim.

I want to receive absolute assurance from AMERIHOME MORTGAGE that this is a valid debt. In order to settle this matter, please sign or have an authorized officer sign the enclosed affidavit, confirming that you have read the agreement, that you understand GAAP, the bookkeeping entries, accounts receivables and deposits, the banking laws, and the Federal Reserve bank's policies and procedures. **Failure of an authorized officer to affirm and sign the enclosed affidavit will stand as your agreement that the debt is NOT valid and that the PLAIN STATEMENT OF FACTS in the affidavit are NOT the truth, failure of an authorized officer to affirm and sign the enclosed affidavit will stand as your agreement that the contrary to the PLAIN STATEMENT OF FACTS in the affidavit are the truth and that JENNA KALTVED owes your company nothing. If an authorize officer signs the enclosed affidavit, please send the signed affidavit to the address listed above.**

**In addition please furnish me with the following information:**

1. A complete statement of Damages, including each and every loss that AMERIHOME MORTGAGE incurred under the alleged agreement.

2. A front and back, true and correct copy of the alleged signed agreement bearing my signature (full & complete disclosure), and a detailed copy of the alleged account. As well as the name, address and telephone number of AMERIHOME MORTGAGE CPA auditor.

If you cannot verify and validate this debt by the above listed means, it will stand that AMERIHOME MORTGAGE and any associated agencies have no right, or capacity to collect on this alleged debt.

During this validation period, there should be no actions which could be considered detrimental to any of my credit reports to include, but not limited to: any negative marks found or any report on any of my credit reports by your company or any company that you represent. As I understand it, that would be in violation of the **Fair Credit Reporting Act** and **Defamation of Character, Bank Fraud, Aggravated Identity Theft and Conspiracy**.

Page 3 of 5

Exhibit 1   page 4 of 7

Non-compliance with this request could violate **Fair Credit Reporting Act, Section 623(a)(3) - Responsibilities of furnishers of information to consumer reporting agencies [15 USC § 1681s-2].**

As I have already been in communication with you and your company requesting that you furnish me with the documents I require to verify that this is a valid debt for over thirty (30) days, I am extending you another fifteen (15) days to gather and respond to this letter or send confirmation that this matter is settled and closed and that this alleged debt is cancelled. Failure to verify and validate the debt within fifteen (15) days by signing the enclosed affidavit and providing the requested documentation and information that are required to actually verify the debt confirms your tacit agreement that the debt is not valid and failure to perform as requested creates the assumption that you are in total agreement with the stipulations that no further action will be taken and an absolute waiver of any right to collect the alleged debt. Your silence shall be taken as your acquiescence, therefore failure to respond will stand as your tacit agreement that the Consumer owes you nothing and that you and your company have no genuine dispute as to any of the material facts and that there is no controversy in the matter whatsoever.

I am of the understanding that a signature promising to pay on a mortgage note (promissory note) is what creates the credits as financial institutions execute loan transactions by accepting promissory notes and placing them on deposit in a consumer's account and that no funds from excess reserves or funds from your company were given or lost by way of this transaction. Furthermore, payment history, as I understand it, is simply evidence that your company continued to collect funds from the consumer due to the lack of disclosure that the consumer's signature funded the note and alleged account. In the event that you and your agency believe that payment history and the mortgage note is somehow confirmation that the debt is valid as if that means that equal or adequate consideration was given or that your company did not use the consumer's money, credit or money equivalent to fund the note, check or other instrument applicable or that your company did not receive something for nothing, please sign have an authorized officer sign the enclosed affidavit and please pay special attention to the notice below.

**NOTICE**

Page **4** of **5**

*Exhibit 1    page 5 of 7*

THIS IS **NOT** A REQUEST FOR CONFIRMATION THAT YOU HAVE A COPY OF AN AGREEMENT OR COPIES OF STATEMENTS. THIS IS A NOTICE THAT I, THE CONSUMER, REQUIRE PROOF THAT YOU HAVE THE REQUISITE KNOWLEDGE OF THE FACTS, THAT I REQUIRE THE FULL ACCOUNTING AND ANY GAAP LEDGERS AND BOOKKEEPING ENTRIES, BALANCE SHEETS AND THAT THE ALLEGED CREDITOR PROVIDED ADEQUATE CONSIDERATION AND INCURRED A FINANCIAL LOSS UNDER THE FULL & COMPLETE ORIGINAL AGREEMENT/NOTE WITH A WET INK SIGNATURE IN ORDER TO PERFORM. AS I UNDERSTAND IT, ANY SUCH COPY IS NOT EVIDENCE OF AN ACTUAL OBLIGATION AND ANY COPY OF A NOTE **SENT DUE TO AN INABILITY TO LOCATE THE ORIGINAL NOTE WITH A WET INK SIGNATURE** WOULD BE A FORGERY TO THE BEST OF MY KNOWLEDGE. IF FOR SOME REASON YOU ARE OF THE UNDERSTANDING THAT YOU ARE NOT REQUIRED TO SEND ME THE ORIGINAL NOTE, PLEASE SEND YOUR PARTICULAR STATEMENT TO THE ADDRESS ABOVE.

**I am keeping a careful record of your actions, including your Method of Verification. I do not consent to e-Oscar or any means of automated verification.**

**Notice to the Principal is Notice to the Agent, and Notice to the Agent is Notice to the Principal.**

Thank you for your attention to this matter.

With Peace and Honor
In Good Faith and Clean hands,

_____
Kaltved: Jenna-Ione [Beneficiary]
Without Prejudice U.C.C. 1-308

**P.S.** Please be aware that dependent upon your response or non response, I may be detailing any potential issues with your company via an online public press release, including documentation of any potential small claims action. And/or, I will file a complaint in federal court and the CFPB.

Page 5 of 5

Exhibit 1   page 6 of 7

## AFFIDAVIT OF FACTS:  VERIFICATION & VALIDATION OF DEBT

Certified mail No. 7022 2410 0002 5637 0085 RRR

**Claimant has entered an AFFIDAVIT OF FACT for the verification and validation of debt; AMERIHOME MORTGAGE has attempted to collect an alleged debt. If the debt is valid, an authorized officer of AMERIHOME MORTGAGE affirms the following PLAIN STATEMENT OF FACTS to be true, complete and correct.**

### PLAIN STATEMENT OF FACTS

The undersigned affiant, being duly sworn, deposes and states:

1.      That I have the requisite knowledge of the facts regarding **"AMERIHOME MORTGAGE Account No.3525292723"** including the loan agreement, account ledgers and bookkeeping entries;

2.      That **AMERIHOME MORTGAGE** does not follow Generally Accepted Accounting Principles (GAAP) or the Federal Reserve Bank's policies and procedures, and did not create credits from **JENNA KALTVED** signed receipts, promises to pay, notes, or other instruments;

3.      That **AMERIHOME MORTGAGE** used its own money, money equivalent, credit or capital, or that of other depositors, as adequate consideration to purchase the loan agreement and notes from **JENNA KALTVED**;

4.      That **AMERIHOME MORTGAGE** did not accept, receive or deposit any money, money equivalent, note, credit or capital from the **JENNA KALTVED** to fund a note, check or similar instrument that was used to finance/fund the charges on the alleged account;

5.      That **AMERIHOME MORTGAGE** incurred financial losses and has been damaged in the amount of $396,120.21 and is attempting to collect a bona fide debt arising from services provided and/or goods sold

6. That all material facts and terms and conditions regarding the alleged account, have been disclosed to **JENNA KALTVED** in the loan agreement and promissory note;

7. That **AMERIHOME MORTGAGE** is the holder in due course of all notes and that the notes were taken for value, in good faith, and without any notice of claims or defenses, and that any transfer of the account was made with the full knowledge and consent of all the parties;

8.  That I have personal knowledge that the loan agreement and promissory notes were not altered or forged in any way.

### ATTESTATION

The facts stated above are true, correct and complete.

Page 1 of 2

Exhibit 1 page 7 of 7

Signed by: _____      Subscribed and Sworn before me this_____
Day of_____, 2_____ .

The State of_____

County of_____

_____
_____
Print Name & Title                    Signature of Notary

Page 2 of 2

Tracking Number:

702224100002563700 85

:opy    Add to Informed Delivery

## Latest Update

Your item was delivered to an individual at the address at 10:43 am on October 2, 2023 in THOUSAND OAKS, CA 91362.

**Get More Out of USPS Tracking:**
USPS Tracking Plus®

Delivered

Delivered, Left with Individual

THOUSAND OAKS, CA 91362
October 2, 2023, 10:43 am

See All Tracking History

**What Do USPS Tracking Statuses Mean?**

0173355454 OE

*Exhibit 2*
*page 2 of 2*



NMLS ID 135776

October 04, 2023

Hours of Operation:
Customer Service: Monday - Friday, 8:30 a.m. to 10:00 p.m. ET
Collections Dept.: Monday - Friday, 8:00 AM to 9:00 PM ET

Douglas Kaltved
Jenna Kaltved
15581 Iodine Street Northwest
Ramsey MN 55303

Qualified Written Requests, notifications
of error, or requests for information
concerning your loan must be directed to:
PO Box 77423, Ewing, NJ 08628

RE: Loan Number: 0173355454
    Property Address: 15581 Iodine Street NW
                      Ramsey MN 55303

Dear Customer:

Thank you for your recent communication. We will promptly review and
thoroughly research your inquiry. Once those steps have been completed a
response will be provided within thirty (30) days.

If your communication includes a request for the identity and address of
the owner of this loan, this information will be mailed to you separately
within ten (10) business days.

Should you have any questions or concerns, please contact us by calling
our direct phone number, (866) 677-8807.

Thank you,

Executive Resolution Analyst

CR044 031 AQR OE



855-501-3035
amerihome.loanadministration.com

795867 000002279 09CEN1 01064001

*Exhibit 3*

*page 1 of 3*

Plain-simple-English & Plain-Simple-Counting-Systems

Non-negotiable
Roberts rules of order apply [In plain language to aid your understanding]
CEO and or Persons with significant control

Notice to Agent is Notice to Principal and Notice to Principal is Notice to Agent
Silence is Acquiescence.

Jenna-Ione: Kaltved

Jenna Kaltved
c/o 18111 203rd Avenue North West
Big Lake, Minnesota [55309]

**To:**
Jim Furash, CEO of AMERIHOME MORTGAGE
1 Baxter Way Ste 300,
Thousand Oaks, CA 91362

12/01/2023

**Certified Mail Number No. 7022 2410 0002 5636 9942 RRR**

**RE: AMERIHOME MORTGAGE Account No. 0173355454**

**MORTGAGE FOLLOW UP LETTER**

Peaceful greetings to you , CEO of AMERIHOME MORTGAGE,

I received correspondence from your company with a copy of a contract as a response to my request that you and your company verify that this alleged debt for account number 0173355454 are valid. Kindly cite the authority that renders a contract on its own as a document that verifies that there equal consideration and a full disclosure given to make a debt valid, as it relates to the accounting, any outstanding balance illustrating both the account receivables and account payables along with any facts and findings to support such a belief and send that particular statement to the address listed above. It is my understanding that a copy of a contract is not at all evidence that equal consideration was given, nor is it the original that I may need for my inspection. I require the full accounting to verify. Including the books that would illustrate any off balance sheet bookkeeping techniques.

If it is your and/or your agency's belief that you provided equal consideration that is reflected on some document other than a bookkeeping ledger in accordance with GAAP and the matching principle, Federal Reserve

Page 1 of 3

*Exhibit 3*

*page 2 of 3*

bank's policies and procedures, proper documentation of accounts receivables, accounts payables and deposits, FR 2046, 2049, 2099 balance sheets, call schedules or any of the requested documents from the debt validation request I sent to your company, please send that particular statement to the address listed above as it would seem from your dunning letter that you and your agency do not believe you have any duty to respond with those documents or at least failed to do so.

If it is your position that you and your company did not give equal consideration, please provide any law, policy, code, regulation or cite any authority that states that it is lawful to bind someone to a contract where there has been no equal consideration.

If it is your position that your company conducted the loan transaction by accepting a promissory note from the consumer in exchange for credits on the "borrower's" transaction account and never used any of your company's reserves, and that it constitutes a deposit by the consumer, please send a statement that reflects that the consumer was given full disclosure of this fact, or send a particular statement that reflects that your company is not required to give full disclosure of all material facts to the address listed above, as it appears that you and your company are of the belief that you gave the consumer full disclosure or that you are not required to give the consumer full disclosure.

Failure to provide these requested statements will leave me with no other choice but to assume that you and your company agree that there is no authority that renders a copy of a contract as verification that a debt is valid and lawful, that the consumer did make a deposit, that you do not agree that your company is not required to give full disclosure, that you agree that your company is required to give full disclosure and equal consideration, that you agree that no equal consideration was given and that you do agree that you or an agent with the authority to bind the company do have a duty to respond. Please send the requested documents within ten (10) days of your receipt of this letter.

## NOTICE OF INTENT

If I do not get a response with the requested statements and/or any statements and proof justifying your actions and failure/refusal to perform and supporting your opinions, or I do not get the requested documents mentioned in the **NOTICE OF CONDITIONAL ACCEPTANCE AND OFFER TO PERFORM**, I intend to file suit and utilize the discovery tools to obtain these requested documents along with specific balance sheets and expert witnesses to explain the ledgers and procedures and policies and any securitization trails and other documents that will be presented in discovery.

Page 2 of 3

Exhibit 3

page 3 of 3

As always I intend to settle my affairs with peace and honor and with good faith and clean hands. I simply want to be certain that the debt is valid and upon the condition that I receive this assurance by the requested documents I will be more than happy and willing and ready to satisfy the obligation. I require certainty, and will not just bend to the will or subject myself to an unsubstantiated opinion or any intimidation tactics, if used, to sway me into participating in something I did not have full disclosure on and where the parties in interest did not have a meeting of the minds as per the laws of the natural balanced universe and our American Jurisprudence.

Thank you for your attention to this matter
Kind Regards,

Jenna-Ione: Kaltved

Exhibit 4

page 1 of 3

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jim Furash, CEO of Amerihome
1 Baxter Way Ste 300 Mortgage
Thousand Oaks, CA 91362

9590 9402 7969 2305 7762 23

2. Article Number (Transfer from service label)

7022 2410 0002 5636 9942

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *M. Tidwell*    ☐ Agent
                  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

M. Tidwell       12/6/23

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Mail Restricted Delivery
   )0)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

*Exhibit 4*

*page 2of3*

Certified Mail Number No. 7022 2410 0002 5636 9942 RRR

## CERTIFICATE OF SERVICE

State of Minnesota

County of Sherburne

On the date: ___December____  __1__, 2023 (_12_/_1_/2023) I mailed, for
Jenna Kaltved, one copy of the papers identified as:

- MORTGAGE FOLLOW UP LETTER (3 pages)

A total of seven (3) pages (not including this Certificate of Service) and all
attachments by United States Postal Services certified mail # 7022 2410 0002
5636 9942 US, Return Receipt Requested in sealed envelope with package pre-
paid and properly addressed to CEO of Jim Furash, CEO of AMERIHOME
MORTGAGE:

AMERIHOME MORTGAGE
1 Baxter Way Ste 300,
Thousand Oaks, CA 91362

I am over the age of 18 and not a party to the transaction involving the papers I
mailed.  I declare under penalties of perjury under the laws of the State of
Minnesota that the above is true, correct, and complete, and that this Certificate
of Service was executed __December____  __1__, 2023.

Print Name: __Robert D. Wagner_____

Signature: __Robert Wn_____

Notary Public

18111 203rd Ave Northwest

Big Lake, MN 55309

ROBERT D WAGNER
Notary Public
Minnesota
My Commission Expires 1/31/2028

Notary Public in and for said State of Minnesota

My Commission Expires __1-31-2028_____



**AmeriHome** mortgage

NMLS ID 135776

*Exhibit 4 page 3 of 3*

December 08, 2023

Hours of Operation:
Customer Service: Monday - Friday, 8:30 a.m. to 10:00 p.m. ET
Collections Dept.: Monday - Friday, 8:00 AM to 9:00 PM ET

Douglas Kaltved
Jenna Kaltved
15581 Iodine Street Northwest
Ramsey MN 55303

Qualified Written Requests, notifications
of error, or requests for information
concerning your loan must be directed to:
PO Box 77423, Ewing, NJ 08628

RE: Loan Number: 0173355454
    Property Address: 15581 Iodine Street NW
                      Ramsey MN 55303

Dear Customer:

Thank you for your recent communication. We will promptly review and
thoroughly research your inquiry. Once those steps have been completed a
response will be provided within thirty (30) days.

If your communication includes a request for the identity and address of
the owner of this loan, this information will be mailed to you separately
within ten (10) business days.

Should you have any questions or concerns, please contact us by calling
our direct phone number, (866) 677-8807.

Thank you,

Executive Resolution Analyst

CR044 031 4RP OE


EQUAL HOUSING
LENDER

855-501-3035
amerihome.loanadministration.com

811385 000001218 09CEN1 01064001

# Exhibit 2

**STATE OF MINNESOTA**                                      **DISTRICT COURT**

**COUNTY OF ANOKA**                                    **TENTH JUDICIAL DISTRICT**

---

Jenna Kaltved,

                Plaintiff,                          **ORDER FOR DISMISSAL**
    vs.                                          **OF PLAINTIFF'S COMPLAINT**

AmeriHome Mortgage Company,
LLC,
                         Court File No: 02-CV-24-1270

                Defendant.

---

The above-captioned matter came on before the Honorable Jenny Walker Jasper, Anoka County District Court, July 25, 2024, on Defendant's Rule 12 Motion to Dismiss.

Plaintiff Jenna Kaltved appeared virtually representing herself pro se. Defendant AmeriHome Mortgage Company ("AmeriHome") appeared through its attorney, Addison Morgan, Esq.

Now, therefore, based upon the files, records and proceedings herein, the Court makes the following:

### ORDER

1. Defendant AmeriHome's motion to dismiss Plaintiff's Complaint for failing to state a claim on which relief can be granted is **GRANTED**.

2. Plaintiff's Complaint is **dismissed with prejudice**.

3. The attached memorandum of law is incorporated herein by reference.

**THERE BEING NO JUST REASON FOR DELAY, LET JUDGMENT BE ENTERED ACCORDINGLY.**

                              **BY THE COURT**:

Walker Jasper, Jenny (Anoka Judge)    Digitally signed by Walker Jasper, Jenny (Anoka Judge) Date: 2024.09.04 16:13:09 -05'00'

_____
Jenny Walker Jasper
Judge of District Court

1

**MEMORANDUM OF LAW**

**Statement of Facts**

Rule 12.02(e) motions turn solely on whether the complaint states a claim upon which relief may be granted. See *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000). For the purposes of Defendant's Rule 12 motion to dismiss, the Court accepts as true and will use the facts alleged in Plaintiff's Verified Complaint filed on March 13, 2024.

On December 28, 2021, Plaintiff entered into a written mortgage agreement. (Complaint at ¶ 6). Plaintiff acknowledges that this contract was with Onward Financing, which later sold the right to collect on the debt to AmeriHome Mortgage. (Ex. 1, Pg. 2). Plaintiff states that, relying on Generally Accepted Accounting Principles (GAAP) and Financial Accounting Standards Board (FASB) principles, she "conducted due diligence to ensure fairness, equal consideration and transparency in the alleged loan transaction." (Complaint at ¶ 7).

Plaintiff sent a Notice of Conditional Acceptance and Offer to Perform, along with an Affidavit of Facts: Verification and Validation of Debt to Defendant on September 25, 2023. (*Id.* at ¶ 8). The Notice was incorporated with Plaintiff's Complaint as Exhibit 1. Plaintiff sought comprehensive loan and account information, requesting that the Defendant verify the validity, origin, and ownership of the alleged debt and provide evidence of equal and adequate consideration in the transaction. (*Id.* at ¶ 10, 22). It purported to give Defendant "a reasonable amount of time" to provide the requested information. (*Id.* at ¶ 11).

On November 7, 2023, Plaintiff received Defendant's initial response containing a photocopy of the alleged financial agreement in question along with a copy of the transaction history of Plaintiff's account. (*Id.* at ¶ 12, 24). Plaintiff, not believing Defendant's documentation was sufficient, sent a Mortgage Follow Up Letter on December 1, 2023, seeking "full disclosure

2

of all material facts of the loan transaction." (*Id*. at ¶ 14, 27). On December 18, 2023, Plaintiff

received a Mortgage Statement from Defendant. (*Id*. at ¶ 15). Subsequently, on January 5, 2024,

Plaintiff received an Acknowledgment Letter from Defendant. (*Id*. at ¶ 16).

Plaintiff was not satisfied with the loan documentation information provided and initiated

this action against Defendant in part questioning the consideration received as part of their

contractual relationship with the original mortgage holder, Onward Financing.

## Analysis

### I.  Standard of Review for Motion to Dismiss for Failure to State a Claim on which Relief may be Granted.

Defendant moves the Court for dismissal of Plaintiff's Complaint for failure to state a

claim on which relief may be granted pursuant to Minn. R. Civ. P. 12.02(e). Pleadings must

"contain a short plain statement of the claim showing that the pleader is entitled to relief and a

demand for judgment for the relief sought.

The threshold showing plaintiffs must make "in order to survive a motion to dismiss

under [12.02(e)] is minimal." *Noske v. Friedberg*, 670 N.W.2d 740, 742 (Minn. 2003). A

reviewing court considers a motion to dismiss for failure to state a claim, it must "consider only

the facts alleged in the complaint, accepting those facts as true and must construe all reasonable

inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.*, 663

N.W.2d 550, 553 (Minn. 2003).

A complaint will be dismissed only "if it appears to a certainty that no facts, which could

be introduced consistent with the pleading, exist which would support granting the relief

demanded." *Bahr v. Capella University*, 788 N.W.2d 76, 80 (Minn. 2010). Therefore, a claim

will only be sufficient against a motion to dismiss for failure to state a claim if it is possible on

any evidence which might be produced, consistent with the pleader's theory, to grant the relief

3

demanded. *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). Legal conclusions in a complaint are not binding on the court. See *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 235 (Minn. 2008).

Plaintiff, through her Complaint, proceeds under numerous causes of action: breach of the implied covenant of good faith and fair dealing (Count I); breach of implied contract from acquiescence (Count II); lack of consideration (Count III); failure to prove bona fide loss (Count IV); lack of bona fide holder status (Count V); unfair business practice (Count VI); estoppel (Count VII); and removal, release, and revocation of lender's rights, titles, and interest (Count VIII). The question is whether Plaintiff has supplied sufficient facts which, when viewing them in the light most favorable to her, support the relief requested under those claims.

## II. Plaintiff's Standing and Availability of Relief for the Causes of Action Stated in the Complaint.

The claims forwarded by Plaintiff, while separate, hinge on whether she has standing to bring this action. Any failure on the part of Defendant to provide her with full disclosures or verifications or to respond to and involve her in the transfer of the mortgage, leading to a breach the parties' contract among other things, depends on Plaintiff's nexus to the debt transfer. Plaintiff's allegations are based upon her questioning the validation of the nature of the assignment of the debt between Onward Financing and AmeriHome Mortgage. See Exhibit 1.

A plaintiff may have standing in two ways: "either the plaintiff has suffered some 'injury-in-fact', or the plaintiff is the beneficiary of some legislative enactment granting standing." *Enright v. Lehmann*, 735 N.W.2d 326, 329 (Minn. 2007) (citing *Snyder's Drug Stores, Inc. v. Minn. State Bd. of Pharmacy*, 221 N.W.2d 162, 165 (Minn. 1974)). To demonstrate an "injury-in-fact," the plaintiff must show "a concrete and particularized invasion of a legally protected interest." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

A plaintiff bringing a show-me-the-note claim generally argues that, because the entity that holds their mortgage is not the same as the entity that holds their note, the mortgage on the home or the foreclosure of that mortgage is invalid. This type of argument has been summarily dismissed throughout Minnesota caselaw, including by the Minnesota Supreme Court in *Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487 (Minn. 2009).

In *Jackson*, the Minnesota Supreme Court held that "any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement." 770 N.W.2d at 500. The court reaffirmed the principle that "legal and equitable title can be separated" and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, "[i]t is a matter between them alone, and does not concern the mortgagor," and such a transaction does "not affect the interests of the mortgagor, and he could not object." *Id*.

Here, Plaintiff's Complaint and the allegations therein appear to proceed under this "show-me-the note" theory of relief. On page 5 in Exhibit 1 of her Complaint, the Notice of Conditional Acceptance and Offer to Perform, she explicitly requests the "complete original agreement/note with a wet ink signature in order to perform… and any copy of a note sent due to an inability to locate the original note with a wet ink signature would be a forgery." This defense, that Defendant must show that they actually have the right to collect the amounts owed under the Note, falls under the exact "show-me-the-note" reasoning that has been resoundingly rejected by the courts. Plaintiff claims that Defendant did not verify the validity, origin and ownership of the alleged debt or provide evidence of valid consideration in the transaction, which should effectively result in injunctive relief via recission of the mortgage. Each of Plaintiff's claims

stem from a perceived right to demand information and desire to call into question the debt's validity.

The fact that Plaintiff sent various letters to Defendant seeking information did not legally obligate the latter to provide that information or perform in any other manner. The parties were never in privity of contract as evidenced by Exhibit 1. Plaintiff and Onward Financing, LLC executed the original Mortgage and Note and Defendant is not shown to be signatory to those agreements. The responses given by Defendant communicating current ownership of the Note, while unsatisfactory to Plaintiff, did not amount to any formation of a contract and were not deficient because Defendant was not under a duty to provide anything further.

The extent of the injuries Plaintiff alleges she has suffered are "potential negative credit consequences," and that "Defendant's actions have caused uncertainty of the true nature of the transaction, negatively impacting the Plaintiff." (See Complaint at ¶¶ 33, 39, 45, 51, 57, and 61). These are not cognizable injuries; the alleged harm is too remote and broadly defined. She was not a party to the transfer of the Mortgage and Note. Plaintiff has not demonstrated any real, concrete injury outside of what *might* happen in the future. In the absence of evidence indicating otherwise, Plaintiff may not challenge the transfer and she has not provided the Court with a valid theory of relief in which to proceed.

For these reasons and those listed below, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief may be granted.

**III.     Plaintiff's Count 1 - Breach of the Implied Covenant of Good Faith and Fair Dealing.**

In Minnesota, every contract includes with it an "implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other's party's performance of the contract. *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 502 (Minn.

1995) (quoting *Zobel & Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984). To establish a violation of this covenant, a party must establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty." *Minnwest Bank Central v. Flagship Properties LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004) (citing *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998).

The implied covenant of good faith and fair dealing carries with it the need for a valid, enforceable contract to exist in order to be actionable. To violate this standard, there must be an agreement between two or more parties which establishes a duty to perform for one party, and the other unjustifiable hinders them from doing so. A claim for breach of the implied covenant of good faith and fair dealing is not an independent cause of action. Plaintiff has also not sufficiently shown what performance is being hindered and how. As her contract was with Onward Financing, not AmeriHome Mortgage, she cannot contest that Defendant has exhibited bad faith in refusing to perform or frustrating contractual duties and this cause of action fails.

## IV.    Plaintiff's Count II - Breach of Implied Contract from Acquiescence.

Where evidence fails to demonstrate that an express agreement was formed, Minnesota law provides that a contract may be implied "from the circumstances or acts of the parties." *Bergstedt, Wahlberg, Berquist Associates, Inc. v. Rothchild*, 225 N.W.2d 261, 263 (Minn. 1975). The existence of an implied contract is a "question to de determined by the trier of fact as an inference of facts to be drawn from the conduct and statements of the parties." *Roberge v. CambridgeCo-Op. Creamery*, 79 N.W.2d 142 (1956).

A contract is formed when two or more parties exchange bargained-for promises, manifest mutual assent to the exchange, and support their promises with consideration. *Medical*

7

*Staff of Avera Marshall Regional Medical Center v. Avera Marshall*, 857 N.W.2d 695, 701

(Minn. 2014).

Here, there was no express written or otherwise agreed-upon contract between the parties.

The only extrinsic evidence of the party's actions that Plaintiff provides lending to her argument

of an implied contract are her assertions that she and Defendant "engaged in private

correspondence" whereby AmeriHome "implicitly agreed to cooperate" with her requests. There

were no bargained-for promises exchanged, nor mutual assent to any exchange. Further, Plaintiff

has not shown that there was any consideration to support the parties' supposed promises,

despite her allegation that the agreement between AmeriHome Mortgage and Onward Financing

should be void for the same reason. Defendant's mere indication that that it would provide

Plaintiff with some information related to the loan transaction with Onward Financing falls well

short of establishing an implied contract.

## V.      Plaintiff's Count III - Lack of Consideration

Consideration is an essential component to the formation of a valid contract. It "requires

that one party to a transaction voluntarily assume an obligation on the condition of an act or

forbearance by the other party." *Id*. (quoting *U.S. Sprint Commc'ns Co., Ltd. v. Comm'r of*

*Revenue*, 578 N.W.2d 752, 754 (Minn. 1998)).

In order to challenge a contract for lack of consideration, a plaintiff is required to

establish the elements of a binding contract, whether that agreement is express or implied.

Plaintiff was not a party to the contract between Defendant and Onward Financing and thus

cannot challenge it for lack of consideration. Plaintiff additionally has not established a contract

being formed with Defendant, and even if she had, there was no reciprocal promise on her end

for the exchange of information requested. Therefore, Plaintiff's claim fails.

8

**VI.      Plaintiff's Count IV - Failure to Prove Bona Fide Loss and Count V – Lack of Bona
Fide Holder Status.**

These claims purport that Defendant lacks the "bona fide holder status" that is necessary

for a loan servicer to enforce a debt under a Mortgage and evidenced by a Note.

This fact may be determined through publicly available resources, which the Court has

the access and ability to reference. *See Eagan Econ. Dev. Auth. v. U-Haul Co. of Minnesota*, 787

N.W.2d 523, 530 (Minn. 2010) ("… We have taken judicial notice of public records and have

said we have the inherent power to look beyond the record where the orderly administration of

justice recommends it.") (internal citations omitted). Additionally, the Minnesota Supreme Court

has formally recognized the Mortgage Electronic Registration System ("MERS"), a resource

wherein members, which include originators, lenders, servicers, and investors, to assign home

mortgage loans and other related interests without having to record each transfer in the local land

recording offices where real estate securing the mortgage is located. *See Jackson v. Mortg. Elec.

Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn. 2009).

County Recorders maintain official real estate documents for properties in their

jurisdiction and their records are made publicly accessible. Further, MERS is an accepted

servicer which has a free program called ServicerID which allows someone to figure out, using

the property's Mortgage Identification Number (MIN), the current servicer of the Note.

Therefore, the Court takes judicial notice of: (1) the Assignment of Mortgage recorded in the

Office of the County Recorder of Anoka County, and (2) MERS and the MERS ServicerID

database. As such, the Court finds that Defendant AmeriHome Mortgage is a valid assignee and

is the servicer of the Mortgage, and the MIN linked to the Mortgage on MERS is the same as

described on the Mortgage itself. For these reasons, both Plaintiff's claims IV and V fail.

9

**VII.    Plaintiff's Count VI - Unfair Business Practices.**

Minnesota's Deceptive Trade Practices Act (DTPA) provides that a person, or in this

case, a business, engages in a deceptive trade practice when, in the course of business, vocation,

or occupation, they, in relevant part:

(1) pass off goods or services as those of another;
(2) cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
(5) represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
(13) engage in (i) unfair methods of competition, or (ii) unfair or unconscionable acts or practices, or
(14) engage in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. 325D.44, subds. 1-3, 5, 13-14.

Plaintiff's claim that Defendant, a loan servicer, has engaged in duplicitous and otherwise

unfair business practices is an action under the DTPA, which generally prohibits the act of

passing off goods and services and there own and creating confusion as to their origin. That is

not the case here. Plaintiff's allegations that Defendant failed to respond adequately, in her

opinion, to her inquires and to provide transparency regarding the Mortgage and the Note, do not

create the type of confusion contemplated by the statute.

There appears to be no doubt as to the source, connection, or other material facts

regarding the Mortgage resulting from the agreement between Defendant and Onward Financing.

That alleged uncertainty Plaintiff experienced upon learning of their contract is not enough,

particularly when the Assignment of Mortgage was recorded in the Office of the County

Recorder of Anoka County, which is publicly available, and the freely accessible MERS

ServicerID database provides the name of the current owner and servicer of a promissory note for a property. Transfers of Mortgages and Notes are readily allowed by law and there is no evidence that it was performed in such a way that was competitively unfair or unconscionable to her as the mortgagor. Plaintiff supposedly being unaware of a transaction involving a loan in her name does not amount to unfair business practices.

### VIII.   Plaintiff's Count VII – Estoppel.

Promissory estoppel is an equitable doctrine that implies a contract in law exists where none exists in fact. *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000). To establish promissory estoppel, a claimant must demonstrate that (1) the promisor made a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice. *See Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 152 (Minn. 2001).

Through this claim, Plaintiff seeks for the Court to, in the interests of justice, intervene and establish that a contract exists in law with Defendant where none existed in fact. The Court finds no injustice to remedy here. Defendant AmeriHome was acting within their rights and duties as a loan servicer, and their correspondence with Plaintiff do not contain any clear, definite promises which they intended to, and Plaintiff did, rely on. It has already been determined that the elements of an enforceable contract have not been demonstrated. Plaintiff essentially asks for an order finding that, because the information she received from Defendant, which they would not legally obligated to supply, was unsatisfactory to her, they should be bound to that and that a duty should be created to compel Defendant to provide more. The Court declines to enforce such a contract.

IX. **Plaintiff's Count VIII - Removal, Release, and Revocation of Lender's Rights, Titles, and Interest.**

This claim falls under Plaintiff's previous assertions of lack of adequate consideration, good faith, and fair dealing, and the uncertainty created by the transaction. These allegations are deficient and do not form a justifiable basis for recission of the mortgage. All of Plaintiff's claims made in the Complaint shall hereby be dismissed.

**JWJ**

12

# Exhibit 3

# UNITED STATES DISTRICT COURT DISTRICT OF MINNESOTA

Douglas Kaltved and Jenna Kaltved,
the homeowners who still live at 15581 Iodine Street NW, Ramsey, Minnesota,

Claimants/Homeowners/Plaintiffs,

v. Case No. _____

Brad Wise, individually and as Sheriff of Anoka County;
Lucas Christoffersen, individually (Deputy Sheriff who executed sale)
Richard Kreyer, individually and as Civil Process Supervisor, Anoka County Sheriff's Office;
Wilford, Geske & Cook, P.A.;
Mackenzie Eichen, individually (AmeriHome employee who signed Assignment of Mortgage as
Vice President of MERS);
Jason Webb, individually (AmeriHome Vice President who executed Notice of Pendency and
Power of Attorney);
AmeriHome Mortgage Company, LLC;
ServiceMac, LLC;
Cenlar FSB (subservicer);
Federal National Mortgage Association (Fannie Mae);
Mortgage Electronic Registration Systems, Inc. (MERS);
Onward Financing, LLC; and
John Doe 1–10,

Defendants.



RECEIVED

DEC 2 2 2025

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**CLAIM AND DEMAND FOR JURY TRIAL** (Wrongful Foreclosure, FDCPA Violations,

Conspiracy and Due Process Violations Under § 1983, Declaratory Judgment, and Quiet Title)

We paid our mortgage every month faithfully. Then we discovered none of these companies

ever actually owned the note or lent us the money. When we asked for proof and disputed the

debt, they kept demanding payments anyway. When we refused to pay people who couldn't

prove they were owed anything, they retaliated by foreclosing and trying to steal our house. We

disputed it at every single step — in writing, in person, with the sheriff just before the sale —

and they did it anyway.

Claimants affirm this lawsuit seeks to quiet title to their home and recover damages based on the

facts alleged herein. Claimants Douglas and Jenna Kaltved bring this action jointly. Claimant

Page 1 of 27


SCANNED

DEC 2 2 2025

U.S. DISTRICT COURT

Jenna Kaltved personally prepared and sent the notices and affidavits attached. We demand a jury trial on everything the law allows. As pro se litigants, we respectfully request the Court construe this Claim liberally and hold it to less stringent standards than formal pleadings drafted by lawyers, pursuant to Haines v. Kerner, 404 U.S. 519 (1972).

## JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction under Pub. L. No. 96-486, § 2(a) (28 U.S.C. § 1331) (42 U.S.C. § 1983; 15 U.S.C. § 1692 et seq.).

2. Supplemental jurisdiction exists over state-law claims under Pub. L. No. 101-650, § 310(a) (28 U.S.C. § 1367).

3. Venue is proper under Pub. L. No. 112-63, § 202 (28 U.S.C. § 1391(b)) because the real property is in this District and a substantial part of the events occurred here.

## PARTIES

4. Claimants Douglas and Jenna Kaltved are residents of Anoka County, Minnesota and the recorded owners of the property at 15581 Iodine Street NW, Ramsey, Minnesota 55303 (PIN 23-32-25-11-0020).

5. AmeriHome Mortgage Company, LLC is a Delaware limited liability company doing business in Minnesota.

6. ServiceMac, LLC is a Delaware limited liability company doing business in Minnesota.

7. Federal National Mortgage Association (FNMA / Fannie Mae) is a government-sponsored enterprise with its principal place of business in Washington, D.C.

8. Mortgage Electronic Registration Systems, Inc. (MERS) is a Delaware corporation doing business in Minnesota.

9. Wilford, Geske & Cook, P.A. is a Minnesota law firm.

10. Onward Financing, LLC is a Minnesota limited liability company.

11. Brad Wise is the Sheriff of Anoka County and a resident of Minnesota.

12. Lucas Christoffersen is a Deputy Sheriff of Anoka County and a resident of Minnesota.

13. Mackenzei Eichen is an individual residing in California and an employee of AmeriHome who signed the October 11, 2023 Assignment of Mortgage as Vice President of MERS

14. Jason Webb is an individual residing in California and a Vice President of AmeriHome who executed the May 5, 2025 Notice of Pendency and Power of Attorney.

15. Cenlar FSB (d/b/a Cenlar Central Loan Administration & Reporting) is a federally chartered savings bank with its principal place of business in Ewing, New Jersey. Cenlar acted as subservicer for AmeriHome and continued collection activity after Claimant Jenna Kaltved's September 2023 debt-validation demand, making it a debt collector under Pub. L. No. 111-203, § 1089(2) (15 U.S.C. § 1692a(6)).

16. John Doe 1–10 are unknown parties who may claim an interest in the property.

## INJURY IN FACT, CAUSATION, AND REDRESSABILITY

17. **Claimants have suffered concrete and particularized injuries in fact**: loss of their $450,000+ home, payment of $46,178.36 under false pretenses, severe emotional distress manifesting in physical sickness and requiring professional treatment, and credit damage.

17.1. As a direct result of Defendants' wrongful foreclosure and the resulting threat of eviction, **Claimants have suffered severe emotional distress** manifesting in physical sickness and requiring professional treatment.

17.2. **Claimants incurred marriage-counseling expenses** in the total amount of $1,000+ to address the marital strain caused by Defendants' conduct (Exhibit R-1 – Marriage Therapy Invoice).

17.3. Claimant **Jenna Kaltved was hospitalized** on August 24, 2025 with a **2.1 cm gallstone** requiring emergency care, a physical illness linked to **extreme stress** caused by Defendants' actions (Exhibit R-2 – Emergency Room Records and Gallstone Diagnosis). Medical expenses: $6,002.00.

17.4. As a further direct physical manifestation of the extreme stress caused by Defendants' **wrongful foreclosure and threatened loss of their home, Claimant Jenna Kaltved gained approximately 44 pounds** between January 2025 and August 2025. This involuntary weight gain has been attributed to chronic anxiety resulting from the foreclosure process (Exhibit R-3 – Medical Records and Photographs Documenting Stress-Related Weight Gain). **Jenna has continued to gain weight from the stress** since it was documented with ER.

18. These injuries are fairly traceable to Defendants' conduct: the separation of the note from the mortgage, the false assignment recorded October 11, 2023, the false Power of Attorney, and the void sheriff's sale on July 1, 2025.

19. A favorable decision quieting title and declaring the sale void will fully redress these injuries by restoring Claimants' ownership and possession of the property and awarding damages. **Claimants are not in default to any Defendant**, as no Defendant has proven they hold the note or loaned actual funds.

**THRESHOLD ISSUE OF STANDING**

20. Homeowners claim that the entire non-judicial foreclosure process and sheriff's sale are void for lack of standing because no Defendant has ever proven it is the holder of the original promissory note under Minn. Stat. § 336.3-301, nor have they shown they loaned actual funds to Homeowners. The Assignment of Mortgage recorded October 11, 2023 (Doc #2400657.001, Exhibit F) transferred only the mortgage — a nullity under Carpenter v. Longan, 83 U.S. 271 (1872). Homeowners claim there can be no valid foreclosure, no valid credit bid, and no valid sheriff's sale when no party has standing to enforce the note, as evidenced by Exhibits D and F. **This is a threshold jurisdictional defect that deprives the entire process of subject-matter validity and violates Claimants' right to due process of law under the Fifth and Fourteenth Amendments**. The sheriff's execution of the sale after certified notice of invalidity constituted state action under Pub. L. No. 104-317, § 309(c) (42 U.S.C. § 1983).

## DESCRIPTION OF THE PROPERTY

21. The subject of this action is certain real property located in Anoka County, Minnesota, commonly known as 15581 Iodine Street NW, Ramsey, Minnesota 55303, and more particularly described as follows: Lot 6, Block 2, Wildlife Sanctuary Second Addition, Anoka County, Minnesota Parcel Identification Number (PIN): 23-32-25-11-0020.

## FACTUAL ALLEGATIONS

22. On December 28, 2021, Homeowners executed a promissory note in the original principal amount of $403,750.00, payable to Onward Financing, LLC (Exhibit B – Promissory Note and Allonge, notarized affidavit).

23. An allonge at the end of the Promissory Note carries an endorsement "Pay to the order of AmeriHome Mortgage Company, LLC" without recourse (Exhibit B).

24. On December 28, 2021, Homeowners executed a mortgage (Doc #2351066.002, Exhibit C – Mortgage, certified by county), in which MERS was named as nominee for Onward Financing, LLC and as mortgagee.

25. While promissory notes are not typically recorded in county land records, no Defendant has produced the original wet-ink note with a complete, unbroken chain of endorsements establishing holder status under Minn. Stat. § 336.3-301.

26. From 2022 through July 2023, Homeowners paid $46,178.36 to AmeriHome.

27. In July 2023, Homeowner Jenna Kaltved discovered what Homeowners Claim to be fraud in the loan origination and servicing and ceased payments.

28. Homeowners are not in default with any party that has proven it is the holder of the original promissory note or has standing to enforce it.

29. In September 2023, to give AmeriHome an opportunity to rebut the alleged fraud through actual accounting and proof of funding, Claimant Jenna Kaltved sent a debt-validation letter demanding the original wet-ink note, GAAP ledgers, and proof of consideration (Exhibit E – September 2023 Debt Validation Letter, notarized affidavit). AmeriHome responded with copies of documents Claimants already had and made no attempt to verify the debt.

30. Fifteen days after receiving the debt-validation letter, on October 11, 2023, Mackenzie Eichen, an AmeriHome employee signing solely as Vice President of MERS, executed and recorded an Assignment of Mortgage (Doc #2400657.001, Exhibit F, certified by

county) transferring only the mortgage to AmeriHome. Homeowners claim that MERS functions solely as nominee and lacks independent ownership of the loan.

31. The allonge attached to the promissory note (Exhibit B) purportedly endorsed the note to AmeriHome on December 28, 2021—the same day as loan origination. However, the Assignment of Mortgage (Exhibit F) was not recorded until October 11, 2023—**a gap of nearly two years**. During this period, **the note and mortgage were separated**: AmeriHome allegedly held the note while MERS (as nominee for Onward Financing) held the mortgage. Homeowners claim this separation violates Carpenter v. Longan, 83 U.S. 271 (1872), which holds that the mortgage follows the note as an incident and cannot exist independently.

32. Homeowners claim upon information and belief that Onward Financing, LLC, the original loan originator MERS purportedly represents, while maintaining an active license with the Minnesota Department of Commerce, ceased active mortgage lending operations in or around Q1 2023. Exhibit U (Onward Financing Dormancy Confirmation, notarized affidavit) includes evidence that Onward's loan officer confirmed the company is no longer originating loans, key personnel departed in January 2023, and business listing services show Onward as 'closed' or inactive. At the time of the October 11, 2023 Assignment of Mortgage, Onward was not actively conducting mortgage business, and MERS—as nominee for a non-operational principal—lacked valid authority to represent Onward or effectuate the assignment.

33. No Defendant has produced the original promissory note with valid endorsements or any documentation showing a corresponding transfer of the note from Onward Financing to

AmeriHome or FNMA. Under Carpenter v. Longan, 83 U.S. 271 (1872), the mortgage follows the note and cannot be separated; without proof of note transfer, the chain of title is broken. Exhibit S (Closing Disclosure, notarized affidavit) further evidences that no funds were advanced to Homeowners, undermining consideration and enforceability. For these reasons, Homeowners challenge the validity of the Assignment of Mortgage and consequent foreclosure.

34. AmeriHome responded on November 7, 2023 and December 4, 2023, stating that Federal National Mortgage Association (FNMA) was the "investor/assignee" of the loan but refusing to provide the original note, any GAAP ledgers, or proof of consideration (Exhibit G – AmeriHome Responses, notarized affidavit). Homeowners claim this creates a dilemma for Defendants: if true, AmeriHome lacked authority to foreclose without authorization from FNMA—yet no such authorization appears in the county records (Exhibit D) or was provided despite Homeowners' demands (Exhibits E, K, P); if false, AmeriHome made misleading representations regarding debt ownership in violation of Pub. L. No. 90-321, title VIII, § 807 (15 U.S.C. § 1692e).

35. Homeowners maintain that AmeriHome cannot escape liability by blaming Onward. When Homeowners demanded validation of the debt in September 2023, AmeriHome was the entity collecting payments and the party that later foreclosed. Under Pub. L. No. 95-109, § 809(b) (15 U.S.C. § 1692g(b)), the debt collector who receives the dispute must cease collection until it verifies the debt. The debt was never properly verified, yet collection and foreclosure continued.

36. On March 4, 2025, Homeowner Jenna Kaltved faxed AmeriHome IRS Forms 1099-A and 1099-B claiming settlement of the account and a Power of Attorney revoking any authority to collect or foreclose (Exhibit L – March 4, 2025 Fax to AmeriHome, notarized affidavit). AmeriHome never responded or disputed the settlement.

37. On May 5, 2025, ServiceMac, LLC executed a Notice of Pendency and Power of Attorney (Doc #2437958.001, Exhibit H, certified by county).

38. On May 23, 2025, Homeowner Jenna Kaltved faxed AmeriHome demanding they halt any loan transfer or foreclosure due to lack of authority (Exhibit M – May 23, 2025 Fax to AmeriHome, notarized affidavit). AmeriHome ignored the demand and proceeded.

39. On May 27, 2025, Homeowner Jenna Kaltved sent Wilford, Geske & Cook, P.A. a certified Cease and Desist Letter demanding they halt foreclosure due to lack of standing and revocation of any power of attorney (Exhibit P – May 27, 2025 Certified Cease and Desist Letter to Wilford Geske & Cook, P.A., accompanied by a notarized affidavit). On June 20, 2025, Homeowner Jenna Kaltved served ServiceMac a certified Notice of Settlement and Lien Release Demand (Exhibit K – June 20, 2025 Notice to ServiceMac, accompanied by a notarized affidavit), asserting lack of standing to foreclose and demanding zero balance confirmation, lien release, original note, and chain of title. Defendants Wilford, Geske & Cook, P.A. and ServiceMac ignored these demands and proceeded with the sale.

40. On June 26, 2025, Homeowner Jenna Kaltved mailed Sheriff Brad Wise a certified Notice of Settlement and Liability (Exhibit A). Attached is the certified mail receipt showing the mailing and delivery of the notice to the Sheriff's Office. In addition,

Homeowner Jenna Kaltved personally delivered a copy of the notice to Sergeant Kreyer

in the Anoka County Sheriff's Civil Division the same day, as attested in the notarized

affidavit attached as Exhibit O. The Sheriff had actual, in-person notice of the

jurisdictional defect and proceeded anyway.

41. On June 27, 2025, ServiceMac responded confirming the sale date but providing no

validation (Exhibit N – June 27, 2025 ServiceMac Response Letter, notarized affidavit).

42. On July 1, 2025, a sheriff's foreclosure sale was held. AmeriHome purchased via credit

bid. Deputy Lucas Christoffersen signed the Sheriff's Certificate of Sale (Doc

#2442295.004, Exhibit I, certified by county).

43. On July 28, 2025, AmeriHome assigned the Sheriff's Certificate to FNMA (Doc

#2444474.001, Exhibit J, certified by county).

44. Homeowners claim superior title to the property based on the properly executed and

recorded Certificate of Acknowledgement and Acceptance of Warranty Deed (Exhibit W)

and Certificate of Acknowledgement and Acceptance of Plat (Exhibit X). Homeowners

claim these documents support their claim to valid legal title to the subject property

located at 15581 Iodine Street NW, Ramsey, Minnesota, free and clear of any adverse

claims.

**PREEMPTIVE RESPONSE TO DEFENDANTS' ANTICIPATED DEFENSES**

Defendants will likely raise the following defenses. Homeowners respond as follows:

45. **"AmeriHome was only the servicer acting for FNMA."** Homeowners contend servicer

status does not cure the note/mortgage split because only the holder of the note can

enforce the mortgage or credit-bid under Minn. Stat. § 336.3-301. AmeriHome admitted

FNMA is the investor/assignee (Exhibit G), yet no recorded authorization from FNMA to AmeriHome appears in the county records (Exhibit D). Even if FNMA holds the note, Homeowners claim AmeriHome lacks recorded authority to foreclose as servicer, violating Minn. Stat. § 336.3-301 and *Carpenter v. Longan*, 83 U.S. 271 (1872).

46. **"The mortgage follows the note automatically."** The recorded Assignment of Mortgage (Doc #2400657.001, Exhibit F) transferred only the mortgage to AmeriHome; the note was never assigned together with the mortgage to FNMA (or to any Defendant) on the record. Homeowners claim the split renders the mortgage unenforceable. *Carpenter v. Longan*, supra.

47. **"AmeriHome was the holder of the note."** AmeriHome admitted in writing in November and December 2023 that Federal National Mortgage Association (FNMA) was the investor/assignee of the loan (Exhibit G). Under Minn. Stat. § 336.3-301, only the holder or person entitled to enforce the note may foreclose. Homeowners contend AmeriHome's own admission confirms it was not the holder.

48. **"The Power of Attorney authorized the foreclosure."** The Power of Attorney (Doc #2437958.001, Exhibit H) relies solely on the 2023 Assignment of Mortgage. Because Homeowners challenge the validity of that assignment, Homeowners contend the Power of Attorney derived from it confers no authority.

49. **"Homeowners are barred by res judicata from a 2024 lawsuit."** The 2024 lawsuit challenged pre-foreclosure conduct (debt validation and servicing violations) but did not address the July 1, 2025 sheriff's sale or FNMA's assignment. The sale and subsequent events are new facts and injuries giving rise to new claims not litigated or decided in the

2024 action. Res judicata requires identity of claims and a final judgment on the merits. Homeowners contend neither exists here.

50. **"Homeowners failed to redeem."** Homeowners contend there can be no valid redemption period when the sale itself is void ab initio for lack of standing.

51. **"The sheriff is immune."** Homeowners assert the sheriff executed the sale after receiving certified mail notice (Exhibit A) and in-person delivery with verbal warning five days before the sale (Exhibit O) of alleged fraud, settlement of the account, and lack of standing. Homeowners contend the sheriff acted outside the scope of lawful authority by executing a sale despite actual notice of jurisdictional defects. Homeowners allege quasi-judicial immunity does not apply when an officer acts with knowledge that the underlying proceeding is void.

52. **"The statute of limitations has run."** The sale occurred July 1, 2025; this action is timely. The statute of limitations on FDCPA claims is one year from the date of violation. 15 U.S.C. § 1692k(d). Defendants' violations continued through the July 1, 2025 sale. To the extent any claims accrued earlier, Homeowners contend the statute is tolled by Defendants' failure to identify the true holder of the note and their concealment of the chain of title, which Homeowners could not have discovered through reasonable diligence despite repeated validation demands (Exhibits E, K, P).

53. **"This Court lacks jurisdiction under the Rooker-Feldman doctrine."** Homeowners claim the Rooker-Feldman doctrine does not apply because Homeowners are not state-court losers seeking review or reversal of a state judgment. No state eviction or unlawful-detainer proceeding has ever been filed, and Homeowners allege the challenged sheriff's

sale is void ab initio for lack of standing and other statutory defects. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

54. **"Ignored cease-and-desist in non-judicial foreclosure does not violate FDCPA."** Foreclosure attorneys who regularly collect consumer debts are "debt collectors" under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291 (1995). Homeowners claim that ignoring a cease-and-desist letter and failing to properly identify the creditor in foreclosure notices violate 15 U.S.C. §§ 1692e and 1692g.

55. **"No conspiracy exists between sheriff and law firm."** Homeowners claim the law firm and sheriff acted in concert to execute a void sale despite actual notice of defects. Overt acts include the law firm's ignored revocation (Exhibit P) and the sheriff's execution after in-person notice (Exhibit O). Homeowners contend these coordinated actions support a claim for conspiracy to deprive Homeowners of constitutional rights under 42 U.S.C. §§ 1983 and 1985(3).

56. **"Cumulative defects do not void the sale."** Minnesota courts require strict compliance with foreclosure statutes. *Ruiz v. 1st Fidelity Loan Servicing, LLC*, 829 N.W.2d 53 (Minn. 2013). Homeowners claim the cumulative defects here—including lack of holder status, failure to produce the original note, ignored validation demands, and execution after notice of defects—void the sale.

## CAUSES OF ACTION

**COUNT I – VIOLATION OF DUE PROCESS** (42 U.S.C. § 1983)

*(Against Sheriff Defendants Brad Wise, Lucas Christoffersen, and Richard Kreyer)*

57. Homeowners incorporate all preceding paragraphs by reference.

58. The Fourteenth Amendment to the United States Constitution prohibits any state actor from depriving a person of property without due process of law. Procedural due process requires, at minimum, notice and a meaningful opportunity to be heard before such deprivation.

59. Homeowners claim that Sheriff Defendants Brad Wise, Lucas Christoffersen, and Richard Kreyer, each acting under color of state law as officers of Anoka County, deprived Homeowners of their property interest in the subject real estate by conducting a sheriff's sale on July 1, 2025, which Homeowners assert is void for lack of standing and jurisdictional defects.

60. On June 26, 2025, Homeowner Jenna Kaltved served actual notice of alleged jurisdictional defects to:

61. (a) Defendant Brad Wise via certified mail (Exhibit A);

62. (b) Defendant Richard Kreyer by both personal in-person delivery with verbal warning and through email correspondence in which Sergeant Kreyer confirmed all foreclosures go through him but he cannot stop the sale absent a court order signed by a judge (Exhibits A and O);

63. Notwithstanding this actual and direct notice, the sheriff Defendants proceeded with the foreclosure sale. Defendant Brad Wise authorized or permitted the sale, Defendant Richard Kreyer, despite personal notice and knowledge, allowed the sale to proceed, and Defendant Lucas Christoffersen executed the sale and signed the Sheriff's Certificate of Sale (Exhibit I).

64. Homeowners claim that these actions deprived them of property without any meaningful pre-deprivation hearing or opportunity to challenge the jurisdictional defects, in violation of the Due Process Clause of the Fourteenth Amendment.

65. Homeowners claim the sheriff Defendants acted with deliberate indifference to Homeowners' constitutional rights by executing the sale despite actual knowledge of the defects and without judicial intervention halting the sale. Homeowners claim that Defendants acted in willful disregard of known defects, which precludes immunity under applicable 42 U.S.C. § 1983 case law.

66. Homeowners have suffered damages including loss of property and emotional distress as a direct result of these constitutional violations.

67. Homeowners have **stated a claim for which relief can be granted** under 42 U.S.C. § 1983 and the Fourteenth Amendment. Homeowners seek relief including, but not limited to:

   67.1.   A declaration that the July 1, 2025 sheriff's sale was conducted in violation of their constitutional rights and is therefore void;

   67.2.   A preliminary and permanent injunction enjoining Defendants from evicting Homeowners or transferring any interest in the property;

   67.3.   Compensatory damages for the loss of their home and emotional distress;

   67.4.   Punitive damages for Defendants' willful disregard of Homeowners' federal constitutional rights; and

   67.5.   Such other relief as the Court may deem just and equitable.

**COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES** ACT (15 U.S.C. § 1692 et seq.)

*(Against Wilford, Geske & Cook, P.A.; Cenlar FSB; AmeriHome Mortgage Company, LLC; ServiceMac, LLC, Jason Webb, Mackenzie Eichen)*

68. Homeowners incorporate all preceding paragraphs as if fully set forth herein.

69. Defendants Wilford, Geske & Cook, P.A., Cenlar FSB, AmeriHome Mortgage Company, LLC, and ServiceMac, LLC are debt collectors within the meaning of Pub. L. No. 111-203, title X, § 1089(2) (15 U.S.C. § 1692a(6)) because they regularly collect consumer debts, including through litigation and servicing.

70. Attorneys who regularly attempt to collect consumer debts through litigation are debt collectors under Pub. L. No. 95-109, title VIII, §§ 801–808 (15 U.S.C. §§ 1692–1692p). See Heintz v. Jenkins, 514 U.S. 291 (1995).

71. Homeowners claim that Defendants used false, deceptive, or misleading representations (§ 1692e) and unfair means (§ 1692f) to collect a debt that they had no right to collect. This includes failing to validate the debt upon Homeowner's written demand and continuing collection and foreclosure activity despite Homeowners' disputes, as shown in Exhibits E, G, and P. Individual defendants Jason Webb and Mackenzei Eichen, acting as agents of AmeriHome, participated in collection activity by executing foreclosure documents after Plaintiffs' demands — willful violations of 15 U.S.C. §§ 1692e, 1692f, and 1692g(b).

72. Defendants received Homeowners' September 2023 validation demand (Exhibit E), May 27, 2025 certified Cease and Desist to Wilford Geske & Cook (Exhibit P), June 20, 2025

certified Notice to ServiceMac (Exhibit K), and June 26, 2025 certified Notice to Sheriff Brad Wise (Exhibit A), yet continued collection and conducted the July 1, 2025 sheriff's sale — willful violations of Pub. L. 90–321, title VIII, § 807 & 808 (15 U.S.C. §§ 1692e, 1692f, and 1692g(b)).

73. Cenlar is jointly and severally liable with Wilford, Geske & Cook for continuing collection activity without proper validation after Homeowner's September 2023 demand (Exhibit E).

74. Homeowners state that AmeriHome's validation responses (Exhibit G) failed to provide proof of creditor entitled to enforce and were overshadowed by simultaneous collection threats, as shown in Exhibit G, which Homeowners claim violates Pub. L. 90–321 § 809 (15 U.S.C. § 1692g(a)(2)).

75. Homeowners have **stated a claim for which relief can be granted** under 15 U.S.C. § 1692 et seq. based on Defendants' failure to cease collection following Plaintiffs' timely debt validation demands and cease and desist notices, as documented in Exhibits E, K, and P (which include sworn affidavits certifying proper service and Defendants' receipt). Plaintiffs seek relief including, but not limited to:

75.1.   An order enjoining further collection or foreclosure efforts pending resolution;

75.2.   Recovery of actual damages including emotional distress linked to Defendants' violations;

75.3.   Statutory damages as permitted by 15 U.S.C. § 1692k;

75.4.   Any further relief the Court deems just and equitable.

**COUNT III – CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS** (42 U.S.C. § 1983)

*(Against AmeriHome Mortgage Company, LLC; ServiceMac, LLC; Wilford, Geske & Cook, P.A.; MERS; Cenlar FSB; and Sheriff  Brad Wise, Richard Kreyer, and Lucas Christoffersen)*

76. Homeowners incorporate all preceding paragraphs as if fully set forth herein.

77. Homeowners claim that Defendants conspired, under color of state law, with the shared objective of depriving Homeowners of their property rights by conducting a foreclosure sale when no Defendant held standing to foreclose, as none were holders of the original promissory note under Minn. Stat. § 336.3-301.

78. Homeowners claim the object of the conspiracy was to wrongfully take Homeowners' home by credit bidding and conducting the sheriff's sale, despite Homeowners' timely certified notices and debt-validation demands providing actual notice of lack of standing and jurisdiction.

79. Homeowners claim overt acts in furtherance of the conspiracy, including but not limited to:

    79.1. Recording the Assignment of Mortgage alone (Doc #2400657.001, Exhibit F);

    79.2. Issuing a Power of Attorney based on that assignment (Doc #2437958.001, Exhibit H);

    79.3. Ignoring Homeowner's March 4, May 23, June 20, and June 26, 2025 certified notices (Exhibits L, M, K, A) and in-person delivery on June 26, 2025 (Exhibit O);

    79.4. Ignoring Homeowner's May 27, 2025 certified Cease and Desist Letter to Wilford Geske & Cook, P.A. (Exhibit P);

79.5. Conducting the July 1, 2025 sheriff's sale despite actual knowledge of lack of standing and jurisdiction;

79.6. AmeriHome and Wilford Geske & Cooke coordinating the foreclosure despite AmeriHome's admission that FNMA was the investor/assignee and no Defendant held the note (Exhibit G).

80. Homeowners claim that as a direct and proximate result of this conspiracy, **they lost their home and suffered damages exceeding $450,000, including loss of property rights, emotional distress, and other harms established through verified evidence (sworn affidavits) and documentation.**

81. Homeowners have **stated a claim for which relief can be granted**, including but not limited to the recovery of compensatory damages for lost property and emotional distress, punitive damages for willful and malicious conduct, an order voiding the July 1, 2025 sheriff's sale, and injunctive relief preventing any further actions adverse to Homeowners' interests.

## COUNT IV – WRONGFUL FORECLOSURE – LACK OF STANDING

*(Against AmeriHome Mortgage Company, LLC; ServiceMac, LLC; Federal National Mortgage Association; MERS; Onward Financing, LLC, Jason Webb, Mackenzie Eichen)*

82. Homeowners incorporate all preceding paragraphs as if fully restated herein.

83. Homeowners claim none of the Defendants was the lawful holder of the original promissory note at the time of the July 1, 2025 foreclosure sale, as required under Minn. Stat. § 336.3-301, nor did any Defendant advance actual loan funds to Homeowners.

84. AmeriHome admitted that Federal National Mortgage Association (FNMA) was the investor and assignee of the loan. However, Defendants have never produced the original promissory note or a certified copy, nor any evidence of valid endorsement or transfer of the note to FNMA or any Defendant. Without possession of the original note with proper endorsements, Defendants cannot establish standing to foreclose.

85. The recorded Assignment of Mortgage, executed by Mackenzie Eichen, an AmeriHome employee signing solely as Vice President of MERS, transferred only the mortgage to AmeriHome on October 11, 2023 (Doc #2400657.001, Exhibit F, certified by county). Homeowners claim that Eichen lacked firsthand knowledge of the debt and did not have valid authority to execute or affirm this assignment on behalf of MERS. Jason Webb executed the Notice of Pendency and Power of Attorney (Exhibit H) on May 5, 2025, and Mackenzei Eichen executed the Assignment of Mortgage (Exhibit F) on October 11, 2023 — unauthorized acts after Plaintiffs' demands, voiding the foreclosure.

86. Exhibit D (Anoka County certified parcel records) confirms that the Assignment of Mortgage was not recorded until October 11, 2023—**nearly 22 months after** the note was purportedly endorsed to AmeriHome on December 28, 2021. During this period, the **note and mortgage were separated**, with AmeriHome allegedly holding the note and MERS (as nominee for Onward Financing) holding the mortgage, violating *Carpenter v. Longan*, 83 U.S. 271 (1872), which holds that a mortgage must follow the note.

87. Exhibit U (Onward Financing Dormancy Confirmation, notarized affidavit) further evidences that Onward Financing, LLC—the original loan originator MERS purportedly

represented—was dormant as of the assignment date, rendering MERS's authority invalid.

88. Exhibit T (Onward Financing Non-Depository Status, notarized affidavit) confirms that Onward Financing, LLC is not a depository institution and is not authorized to fund loans directly as a bank would. Together with Exhibit S (Closing Disclosure, notarized affidavit) showing no funds were advanced to Homeowners, these exhibits substantiate that valid consideration for the loan was lacking, thereby undermining enforceability of the loan instruments.

89. Homeowners claim that Defendants have failed to provide critical documentation requested in Plaintiffs' notices, including:

- A GAAP-compliant accounting of the loan's funding and promissory note's deposit demonstrating receipt and equal exchange;

- Complete servicing records since June 1, 2025, including assignment documents from Cenlar FSB or AmeriHome Mortgage, and proof of RESPA-compliant notice of transfer;

- A sworn affidavit affirming the holder in due course status and concrete, particularized injury caused by the alleged debt.

Failure to provide this documentation raises concerns of fraudulent claims, potentially rendering the loan unenforceable under 12 U.S.C. § 2605 (RESPA) and 15 U.S.C. § 1692g (FDCPA).

90. Homeowners claim the Assignment of Mortgage and consequent foreclosure are invalid under Minnesota law.

91. Defendants received Homeowners' formal notifications, including a September 2023 debt-validation demand (Exhibit E), a June 20, 2025 certified Notice of Settlement and Lien Release Demand to ServiceMac (Exhibit K), and a May 27, 2025 certified Cease and Desist Letter to Wilford, Geske & Cook (Exhibit P) — all accompanied by notarized affidavits confirming proper service. Despite receiving these, Defendants proceeded with collection and the sheriff's sale on July 1, 2025.

92. Homeowners demand Defendants prove their standing and authority to foreclose by producing the original wet-ink note, endorsements, recorded assignments of the note and mortgage prior to initiation of foreclosure, evidence of possession, and proof of funding.

93. Homeowners claim the sheriff's sale is void ab initio because AmeriHome foreclosed without the note and without standing, as shown by Exhibits D and F. Without proof, the sale is invalid, and title remains with Homeowners free of all adverse claims and lienholders.

94. Homeowners have **stated a claim for which relief can be granted**, seeking:

    94.1.  A declaration that the July 1, 2025 sheriff's sale and all subsequent transfers are null and void;

    94.2.  Quiet title to the Property in favor of the Homeowners free and clear of any adverse claims or encumbrances;

    94.3.  Compensatory damages for loss of property and emotional distress;

    94.4.  Punitive damages for willful misconduct by Defendants;

    94.5.  Injunctive relief preventing any enforcement or transfer of claims arising from the foreclosure sale; and

94.6.  Such other relief as the Court deems just and equitable.

## COUNT V – DECLARATORY JUDGMENT (28 U.S.C. § 2201) & QUIET TITLE

95. Homeowners incorporate all preceding paragraphs as though fully restated herein.

96. Homeowners' superior title to the property is demonstrated and confirmed by the properly executed and recorded Certificate of Acknowledgement and Acceptance of Warranty Deed (Exhibit V, certified by county) and the certified Plat of the property (Exhibit W, certified by county). These documents affirm Homeowners' ownership rights and demonstrate that any sheriff's sale and subsequent transfers constitute a cloud on title, which must be removed.

97. Homeowners claim that the Assignment of Mortgage recorded on October 11, 2023 (Doc #2400657.001, Exhibit F) transferred only the mortgage without a simultaneous recorded assignment of the promissory note. Under Carpenter v. Longan, 83 U.S. 271 (1872) and Minn. Stat. § 336.3-203(b), the transfer of rights in the note carries the mortgage as an incident, but the reverse is not true.

98. Because Defendants have never produced or recorded any instrument showing transfer of the promissory note itself to AmeriHome, ServiceMac, or FNMA, no Defendant was a "person entitled to enforce" the instrument under Minn. Stat. § 336.3-301 at the time of foreclosure. This defect, combined with dormant originator (Exhibit U) and no usable funds advanced (Exhibit S), invalidates the foreclosure. Ruiz v. 1st Fidelity Loan Servicing, LLC, 829 N.W.2d 53 (Minn. 2013) (cumulative defects void sale).

99. Homeowners claim that upon alleging specific defects in Defendants' standing and foreclosure authority (including lack of note possession and invalid assignments), the

burden shifts to Defendants to prove lawful authority to foreclose and enforce the note under Minn. Stat. §§ 336.3-301 and 336.3-203. To date, Defendants have failed to meet this burden.

100.    The Sheriff's Certificate of Sale (Doc #2442295.004, Exhibit I) and the Assignment of the Sheriff's Certificate (Doc #2444474.001, Exhibit J) constitute a cloud on Homeowners' title, as the underlying foreclosure sale and assignments leading to these documents suffer from fundamental defects including lack of standing and invalid assignments. These defects require removal of all claims and encumbrances associated with the sale and transfers.

101.    Homeowners are entitled to a decree quieting title in their names free and clear of all Defendants' claims or any other adverse claims.

102.    Homeowners have **stated a claim for which relief can be granted**, seeking:

102.1. A declaration that the July 1, 2025 sheriff's sale and all subsequent transfers are null and void;

102.2. Quiet title in favor of the Homeowners free and clear of any adverse claims or encumbrances;

102.3. An injunction enjoining Defendants from evicting Homeowners or interfering with their possession of the property;

102.4. Compensatory damages for loss of property and emotional distress;

102.5. Punitive damages for Defendants' willful misconduct;

102.6. Injunctive relief preventing any enforcement or transfer of claims arising from the foreclosure sale; and

102.7. Such other relief as the Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Claimants respectfully request that this Honorable Court, in upholding its oath to support the Constitution of the United States and the laws of the State of Minnesota, enter judgment in favor of Claimants and against Defendants as follows:

A. Declaring the July 1, 2025 sheriff's sale and all subsequent transfers void ab initio because of the defects alleged herein, and declaring any liens or debts asserted by Defendants invalid and unenforceable due to failure to provide required documentation.

B. Quieting title to the Property of Homeowners free of all defendants' claims, enjoining Defendants from asserting any further adverse claims, evicting Homeowners, interfering with possession, continuing collection efforts, or reporting the disputed debt to credit agencies.

C. Compensatory damages in an amount at least equal to the payments made to AmeriHome to date, currently totaling $46,178.36, plus pre- and post- judgement interest at the legal rate, or such other amount proven through evidence and discovery.

D. Punitive damages pursuant to Minn. Stat. § 549.20 in an amount to be determined at trial.

E. Statutory damages under the Fair Debt Collection Practices Act (15 U.S.C. § 1692k) in an amount of at least $1,000 per violating Defendant, or such greater amount as the Court deems just and proper.

F. Order Defendants to produce the original wet-ink promissory note for inspection and forensic examination.

G. Toll the redemption period under Minn. Stat. § 580.23 until final judgment.

H.  Costs, disbursements, and such other relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Claimants demand a trial by jury on all triable issues.

Dated: December 22, 2025

_____
Douglas Kaltved, Pro Se

_____
Jenna Kaltved, Pro Se

**AFFIANT DECLARATION**

Jenna Kaltved is the primary affiant for this Claim. I have personal knowledge of all facts alleged herein due to my direct involvement in preparing and sending all notices, demands, and communications with Defendants and the Sheriff's Office. Douglas Kaltved joins in this verification but relies on my personal knowledge as the primary source of the facts.

Dated: December 22, 2025

_____
Jenna Kaltved, Affiant

_____
Douglas Kaltved, Co-Verifier

**CERTIFICATION**

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and facts, and that I have conducted reasonable inquiry as required by Fed. R. Civ. P. 11(b), including verification of all statutes, cases, and facts against public sources.

_____
Jenna Kaltved

_____
Douglas Kaltved (joins in verification)

Subscribed and sworn to before me this 22nd day of December, 2025.

_____
Notary Public Signature

My Commission Expires: 1-31-2028

ROBERT D WAGNER
Notary Public
Minnesota
My Commission Expires 1/31/2028

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Adv. Case No.: 26-04027 |
| Jenna Ione Kaltved | Bky. Case No. 26-40537 |
| Debtor, | |

Jenna Ione Kaltved,

Plaintiff,

v.

Service Mac LLC, AmeriHome Mortgage
Co., LLC, Onward Financing LLC, Federal
National Mortgage Association, and Mortgage
Electronic Registration Systems, Inc.

Defendants.

**ORDER GRANTING DEFENDANT ONWARD
FINANCING LLC'S MOTION TO DISMISS**

Upon consideration of Defendant Onward Financing LLC's Motion to Dismiss, all

the files, and the proceedings herein:

**IT IS HEREBY ORDERED** that Defendant Onward Financing LLC's Motion to

Dismiss is GRANTED and Plaintiff Jenna Kaltved's claims against Defendant Onward

Financing LLC are dismissed with prejudice.

Dated: _____, 2026

_____
Honorable Katherine A. Constantine
United States District Judge

1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Adv. Case No.: 26-04027 |
| Jenna Ione Kaltved | Bky. Case No. 26-40537 |
| Debtor, | |
| | |
| Jenna Ione Kaltved, | |
| Plaintiff, | |
| | **CERTIFICATE OF SERVICE** |
| v. | **BY MAIL** |
| | |
| Service Mac LLC, AmeriHome Mortgage Co., LLC, Onward Financing LLC, Federal National Mortgage Association, and Mortgage Electronic Registration Systems, Inc. | |
| | |
| Defendants. | |

Natalie McCully, of Redford Law PA, being duly sworn, states:

I hereby certify that on April 9 2026, I served the following:

1) Amended Notice of Hearing on Defendant Financing LLC's Motion to Dismiss;

2) Defendant Onward Financing LLC's Memorandum of Law in Support of Motion to Dismiss; and

3) [Proposed] Order Granting Defendant Onward Financing LLC's Motion to Dismiss.

upon Plaintiff Jenna Kaltved by placing an exact copy of the document into an envelope addressed to the Plaintiff at the address indicated below:

> Jenna Kaltved
> 15581 Iodine Street NW
> Ramsey, MN 55303

after affixing postage in the appropriate amount and placing the envelopes in the United States Mail at the City of Eden Prairie, Minnesota.

1

I declare under penalty of perjury that everything I have stated in this document is true and correct.  Minn. Stat. § 358.116.

Dated: <u>May 19, 2026</u>                    <u>/s/ Natalie McCully</u>
                                       Natalie McCully

Signed in the County of Hennepin
State of Minnesota

2